ARTHUR *v.* McCALLUM.

1. PARTNERSHIP—COMPENSATION FOR SERVICES OF PARTNER—CON-
TRACTS—PRESUMPTIONS.

In the absence of agreement, one partner cannot collect
pay for services performed for the partnership, as each
partner is presumed to devote his time, skill, and en-
deavor to the partnership business and this without com-
pensation other than his share of the profits.[1]

2. SAME—DETERMINING ISSUE.

In determining whether an agreement for payment for ser-
vices rendered a partnership by a partner exists, the court
may take into consideration all the surrounding facts
and circumstances of the case, the course of dealing be-
tween the partners, the reasonableness or unreasonable-
ness of the claim made and the probabilities arising out
of the conduct of the business.

3. SAME—ACCOUNTING—COMPENSATION FOR SERVICES OF PARTNER—
CONTRACTS—EVIDENCE.

In an action by one partner for a partnership accounting
and to recover for services rendered the partnership, where
it appeared that an agreement for compensation was made;
that subsequently the firm moved into premises owned by
one of the partners, and later into another building; that
plaintiff devoted all of his time to the business, and that
the firm was very prosperous, evidence *held* sufficient to
show that the contract was modified by an arrangement
whereby plaintiff was to receive no salary in considera-
tion of the furnishing of rent, light, and heat free to
the partnership only while in defendant's building, and
that the original agreement was restored upon leaving
defendant's building.

4. SAME—ACCOUNTING—MONEY ADVANCED BY PARTNER.

A partner who draws money from his personal account
and deposits it to the credit of the firm is entitled to
credit therefor in a partnership accounting.

[1]On right of partner to compensation for services rendered
to the partnership, see comprehensive note in 17 L. R. A. (N. S.)
385.

Appeal from Oakland; George W. Smith, J. Submitted January 16, 1917. (Docket No. 148.) Decided March 30, 1917.

Bill by Andrew L. Arthur against William McCallum for an accounting and other relief. From a decree for plaintiff, defendant appeals. Affirmed.

*Hymers, Fredenburgh & Heitsch,* for appellant.

*Pelton & McGee,* for appellee.

FELLOWS, J. This is a bill filed to dissolve a copartnership formed April 24, 1913, and for an accounting. Pending the hearing many of the matters were adjusted by stipulation, leaving few questions only for determination by the court. The plaintiff prevailed in the lower court, and the defendant appeals from the allowance of two items.

The partnership was formed to take over from the Detroit Trust Company as receiver in bankruptcy of the Flanders Manufacturing Company, the sprayer pump business of that institution, some of the property being at Pontiac, and some at Chelsea, the price being $1,300. It was formed at the suggestion of plaintiff, who apparently was familiar with the property. It would appear that the money with which to make the purchase was obtained by a loan from the bank, which was later repaid from the business. Plaintiff at that time did not have employment, nor was he engaged in any business during the continuance of the partnership, other than that in which the parties were jointly engaged. The defendant during all that period had other business. It was contemplated the plaintiff would have the management of the business, and that defendant would not be required to devote his time to it. The agreement was not reduced to writing.

The question of compensation to the plaintiff for his services presents the principal question in the case. Both parties concur that it was agreed at the time the partnership was formed that plaintiff should draw $80 per month for his services. Plaintiff insists that there was no limit on this arrangement, while defendant testifies:

"*Q.* Well, do you remember what the conversation was?

"*A.* That he was to have $80 a month until other arrangements were made.

"*Q.* He was to have $80 a month until other arrangements were made?

"*A.* Yes, sir.

"*Q.* And by other arrangements you meant what?

"*A.* I meant until I could take it over or after I would look after it more thoroughly myself and take care of it."

A short time after the making of the partnership agreement the defendant completed a building on Howard street, and the stock was moved into it. Thereafter, the exact date being in dispute, a conversation took place between the parties with reference to plaintiff's compensation. The plaintiff's version of this conversation is that they had just paid a note at the Commercial Bank leaving them few funds on hand, that defendant stated that he had put up the building and would furnish the light and heat, and that he would offset that against plaintiff's wages "until we got on our feet," and that plaintiff accepted the suggestion. Defendant's version of this conversation is that he stated to plaintiff that the goods were now where he could look after the business as well as plaintiff, that there was more expense to him than to plaintiff, and that there would be no salary from then on, and that plaintiff said it was all right.

They remained in defendant's building less than a year, and during this time defendant made no claim

against the partnership for rent of the store, light, or heat, and plaintiff made no claim for salary. They then moved the stock into another building, where the firm paid rent and for light and heat. Plaintiff claims that thereafter he had charge of the business, and that, while defendant assisted some, the management and work of the business devolved upon him. It is his claim that the arrangements under which they worked while occupying defendant's building operated as a temporary suspension of the agreement to pay him compensation, and that, when the defendant no longer furnished the building, the light, and heat, the temporary arrangement of offsetting the same against his services ceased, and the original terms of the partnership agreement became operative, and he became entitled to the salary as agreed thereby; in other words, that the modification of the agreement ceased when the defendant ceased to furnish the things which such modification called for. The defendant insists that the arrangements made and which were operative during the time his building was occupied put an end to any claim for compensation to plaintiff, and that before he would again be entitled to compensation there must be an express agreement to pay the same. He also claims that from the time they moved to their new location he devoted a large amount of time to the business sufficient in fact to offset that of plaintiff's.

We do not think the record sustains defendant's contention that he devoted time and attention to the business equal to that devoted by plaintiff, or that he devoted any considerable time to the business of the partnership after they moved out of his building. He was largely interested in other affairs, and his services to the partnership were intermittent. Under the agreement of partnership it was not contemplated that he was to give any considerable time to the business and we do not think he did.

In the absence of agreement, one partner cannot collect pay for services performed for the copartnership; each partner is presumed to devote his time, skill, and endeavor to the partnership business and this without compensation, other than his share of the profits. But it does not follow that the court is precluded from taking into consideration all the surrounding facts and circumstances of the case, the course of dealing between the partners, the reasonableness or unreasonableness of the claim made, the probabilities arising out of the conduct of the business, in determining whether such agreement exists. *Morris* v. *Griffin,* 83 Iowa, 327 (49 N. W. 846) ; *Emerson* v. *Durand,* 64 Wis. 111 (24 N. W. 129, 54 Am. Rep. 593).

It is admitted that originally there was an agreement for compensation. The reason for its modification was the furnishing of the store building, light, and heat by defendant. It is admitted that after they moved to their last location these were not furnished. It is admitted that the business was a prosperous one; that in addition to paying off the loan for the purchase price each party received $1,000 in cash as his share of the profits, and they had several thousand dollars of firm assets on hand. This we are satisfied was due to plaintiff's foresight in the purchase and the application of his time and energy to the business rather than to any efforts on the part of defendant. If the suspension of plaintiff's compensation was only to continue, as testified by plaintiff, until they got on their feet, it is apparent that that time had arrived when they were able to draw out $2,000 profit on a $1,300 investment. If the reason for the suspension of that compensation was that defendant was furnishing rent, heat, and light, that reason ceased when they moved out of defendant's building. If the reason of the suspension was that the goods were in defendant's

building where he could look after the business as well as plaintiff, and there was more expense to him than to plaintiff, that reason would no longer be operative after the condition ceased to exist.

Upon the testimony and the circumstances as detailed in this record, we are persuaded that the plaintiff's contention is sustained. We think the plaintiff agreed to forego his compensation of $80 per month, as agreed in the original understanding, while, and only while, defendant was furnishing the building, light, and heat, and that, when the conditions under which the modification of the agreement ceased to exist, the modification itself ceased to exist, and the original agreement was again restored in force.

One other item is involved in this appeal. This is an item of $100 cash advanced by plaintiff to the firm September 22, 1913. The proof conclusively shows that this sum was drawn from plaintiff's personal account and deposited to the credit of the firm on the date named. He is entitled to a credit for it, and it is immaterial under what circumstances it was furnished. The firm has had the use and benefit of it and should account.

It follows that the decree of the court below is right, and should be, and is, affirmed. Plaintiff will recover of the defendant the costs of this court.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.