NOGUERAS v MAISEL & ASSOCIATES OF MICHIGAN

Docket No. 75434. Submitted February 7, 1985, at Lansing.—Decided April 16, 1985.

On July 2, 1979, Harrisburg Properties was formed as a Michigan copartnership. Plaintiff, Peter B. Nogueras, defendant Maisel & Associates of Michigan, and 11 other individuals constituted the members of the Harrisburg general partnership. All of the partners aside from Maisel were employees of Malan Construction Company in 1979. Maisel develops shopping centers. Malan is a Michigan corporation, with 90% of its shareholders being the general partners of Maisel. Malan is Maisel's general contractor, construction manager and property manager for its shopping center projects. Malan performs similar service for E. N. Maisel & Associates another incarnation of Maisel which contains a slightly different mix of partners. In 1978, E. N. Maisel purchased approximately 13 acres of land in Harrisburg, Illinois. Later in 1978, E. N. Maisel assigned the property and purchase agreement to Maisel in consideration for the reimbursement of amounts already paid on the property as well as the assumption of the responsibility for future payments. By the end of 1978, Maisel decided to go forward with a shopping center on the property. Maisel also decided to reward certain long-term key employees at Malan with partnership interests in the Harrisburg project. Without contributing cash or property, the employees received various partnership interests in the Harrisburg project, but, as general partners, they also assumed liability for the cost of the property and the

REFERENCES FOR POINTS IN HEADNOTES
[1] 60 Am Jur 2d, Partnership §§ 266-268, 335, 336.
[2] 5 Am Jur 2d, Appeal and Error § 703.
[3] 60 Am Jur 2d, Partnership §§ 123, 266-270.
[4] 60 Am Jur 2d, Partnership §§ 113, 286, 359.
[5] 38 Am Jur 2d, Gifts § 92.
[6] 45 Am Jur 2d, Interest and Usury §§ 257, 270.
[7] 60 Am Jur 2d, Partnership § 110.
[8] 18 Am Jur 2d, Corporations §§ 14-19.
  Stockholder's personal conduct of operations or management of assets as factor justifying disregard of corporate entity. 46 ALR3d 428.

project. Although no formal partnership agreement was adopted, the authorization and agreement filed by the partnership provided that Maisel would be managing partner, securing financing and executing and entering into all aspects of its business. Substantial construction on the project began in the summer of 1979, with Malan serving as general contractor for a fee of total costs plus 8% for construction of a K mart store and the site work. For the other tenant stores, Malan ultimately subcontracted construction, serving only as construction manager for a 2% fee. Maisel itself financed approximately $1.2 million in 1979 for initial construction, prior to securing funding from third-party lenders. The Harrisburg partnership claimed a net operating loss during this developmental period in 1979 of $59,704.60. Maisel continued to advance funds to the partnership for construction even after loans were secured from its third-party lenders, K mart Corporation and Michigan National Bank-Detroit, in February and March, 1980. By late 1980, interest on the Michigan National Bank-Detroit loan had increased to the point where the Harrisburg carrying costs exceeded the project's income from rents. Without consulting the other partners, Maisel sold the K mart building portion of the project. The sale resulted in a net profit of approximately $808,000 with net cash proceeds to Harrisburg amounting to $669,819. Plaintiff objected to the timing of the sale which generated $830,175 of short-term capital gain to the partnership, of which his share was $68,456 taxable fully as ordinary income. Except for plaintiff, who by this time was no longer employed at Malan, Maisel made interest-free loans to the remaining partners to cover their tax liabilities. Plaintiff thereafter instituted two actions in the Oakland Circuit Court. Named as defendant in one action was Maisel and in the other action the defendants were Maisel and the other individual partners in Harrisburg. The trial court, Steven N. Andrews, J., ordered a consolidation of the cases. In both suits, the plaintiff sought legal and equitable relief, including dissolution of the Harrisburg partnership, appointment of a receiver, an accounting and damages. Subsequently, in March, 1981, Maisel sold an outlot parcel of the partnership property for $140,000, again without seeking the consent of the other partners, reasoning that the negative cash flow of the project necessitated the sale. On April 12, 1982, the circuit court approved the sale of the balance of the shopping center with the exception of a second outlot for the sum of $3,358,290. On that same date, Harrisburg was dissolved by the court. The circuit court then appointed a receiver to oversee the windup of the partnership affairs. On April 30, 1982, the trial court ordered Maisel to file a formal

accounting of the Harrisburg partnership affairs from the time of its inception to its dissolution. The initial accounting was filed on August 13, 1982. Plaintiff did not file formal objections to the accounting. Instead, plaintiff retained his own accounting firm to analyze Maisel's accounting. On March 28, 1983, following an adjournment to allow Maisel to amplify the accounting, a supplemental accounting was filed by Maisel. The trial court thereafter entered a summary judgment and order of no cause of action against the plaintiff. The trial court found that plaintiff failed to meet his burden of proving that fees paid to Malan for overhead and profit were unreasonable, and that plaintiff had not shown such an identity of interest between Malan and Maisel to conclude that one entity was merely the instrumentality of the other. The court further rejected plaintiff's contention regarding usury and his assertion that the land and developmental and carrying costs of the project were neither a gift nor a capital contribution to the other partners from Maisel. Plaintiff appeals. *Held:*

1. The presentation of the supplemental accounting by Maisel served to facilitate the trial court's review of the transactions involved. Once Maisel became aware that plaintiff's claim for damages asserted specific complex financial and bookkeeping improprieties, it became incumbent upon Maisel to focus upon those transactions and to set forth whatever schedules and corrections were necessary to present all the relevant information for the trial court's analysis. Plaintiff was not unfairly prejudiced by the timing or format of this information. Its admission did not offend the purpose or spirit of MRE 1006.

2. Upon the lower court's finding that Maisel had established the accuracy and correctness of its accounting, the burden of proof as to the controverted entries shifted to the plaintiff. Plaintiff's argument to the contrary is without merit.

3. The facts do not support plaintiff's argument that the land for the shopping center was either a gift from Maisel or a capital contribution. The evidence indicates that it was the intention of Maisel, and the understanding of the majority of the partners, that the contribution of land bear interest. The fact that there was not a formally-executed note evidencing such an intent is not dispositive where, as here, there is ample testimony that the intention of the partners was that the advancement bear interest. The trial court correctly held that plaintiff had the burden to prove that the land was a gift. The trial court did not err in finding that plaintiff had failed to meet that burden.

4. The burden of proof was properly placed on the plaintiff in

regard to his allegations regarding the necessity of certain loans and the interest charged. The facts did not clearly preponderate toward a contrary result or a finding of an abuse of discretion by the trial court.

5. The trial court properly rejected plaintiff's usury claim. An attempt by Maisel to claim a usury defense would be subject to majority control. Here, only plaintiff complained that the interest rate was usurious. To give credence to plaintiff's privity argument would upset the established partnership principle of majority rule in ordinary business matters.

6. The trial court properly found no evidence that Malan and Maisel were anything but separate and distinct legal entities and that plaintiff had not produced evidence to support a finding that Malan was merely an instrumentality of Maisel. The three requisites to piercing the corporate veil and finding an identity between business entities were not established.

7. The trial court correctly declined to award plaintiff attorney fees. Plaintiff alone opposed the majority in the partnership transactions. Under these circumstances, the other partners should not bear the cost of attorney fees.

Affirmed.

1. PARTNERSHIP — ACCOUNTS AND ACCOUNTING — EVIDENCE.

Evidence may be admitted which is pertinent and relevant to the issues framed by the pleadings in a suit for a partnership accounting; an accounting action is designed to produce and evaluate all testimony relevant to the various claims of the partners; an accounting is more than a presentation of financial statements, it encompasses a review of all transactions, including alleged improprieties, which should be reflected in the financial statements.

2. APPEAL — EQUITABLE ACCOUNTING — *DE NOVO* REVIEW.

The Court of Appeals review of an equitable acounting is *de novo,* although the lower court's findings will not be disturbed unless the evidence clearly preponderates in the other direction.

3. PARTNERSHIP — ACCOUNTS AND ACCOUNTING.

The rule that all doubts as to a partnership accounting must be resolved against the managing partner applies only where the partnership's business records are incomplete.

4. PARTNERSHIP — CONTRIBUTIONS — EXCESS CONTRIBUTIONS — INTEREST.

A contribution by a partner can either be by way of capital or advances to the partnership property, with any contribution of

capital in excess of the agreed-upon amount being treated as an advance subject to repayment with interest from the date of the payment or advance (MCL 449.18[c]; MSA 20.18[c]).

5. Gifts — Burden of Proof.

The general rule is that the burden of proving that a gift was made, including the existence of all the elements necessary to its validity, is upon the donee or the party asserting the gift.

6. Interest — Usury.

Usury is a personal defense which can only be asserted by the borrower of the funds (MCL 438.32; MSA 19.15[2]).

7. Partnership — Partnership Business — Acts in Contravention of Partnership Agreement.

Any difference arising as to ordinary matters connected with a partnership's business may be decided by a majority of the partners, however, an act in contravention of any agreement between the partners may not be done rightfully without the consent of all of the partners (MCL 449.18[h]; MSA 20.18[h]).

8. Corporations — Actions — Piercing the Corporate Veil.

There are three requisites to piercing the corporate veil and finding an identity between business entities: (1) the corporate entity must be a mere instrumentality of another entity or individual, (2) the corporate entity must be used to commit a fraud or wrong, and (3) there must have been an unjust loss or injury to the plaintiff.

*Gary Pollack,* for Peter B. Nogueras.

*Miro, Miro & Weiner, P.C.* (by *Samuel C. Damren),* for Maisel & Associates of Michigan.

Before: Danhof, C.J., and T. M. Burns and Beasley, JJ.

Per Curiam. Plaintiff appeals as of right from a judgment and order of November 23, 1983, of no cause of action on his claim for damages against defendant Maisel & Associates of Michigan. Plaintiff challenged the propriety of Maisel's final accounting of the partnership assets of Harrisburg Properties and sought to recover for certain alleg-

edly improper expenditures and charges incurred by Maisel as managing partner.

On July 2, 1979, Harrisburg Properties was formed as a Michigan copartnership. The captioned parties in this dispute, along with 11 other individuals, constituted the members of this general partnership. Plaintiff held an 8.246% interest in the partnership and Maisel held a 1% interest. All of the partners aside from Maisel were employees of Malan Contruction Company in 1979.

Maisel develops shopping centers from the initial acquisition of vacant land to constructed, fully-leased and permanently-financed facilities. Malan is a Michigan corporation, with 90% of its shareholders being the general partners of Maisel. Malan is Maisel's general contractor, construction manager and property manager for its shopping center projects. Malan performs similar services for E. N. Maisel & Associates, another incarnation of Maisel which contains a slightly different mix of partners.

In 1978, E. N. Maisel purchased approximately 13 acres of land in Harrisburg, Illinois. On September 28, 1978, E. N. Maisel assigned the property and purchase agreement to Maisel in consideration for the remibursement of amounts already paid on the property as well as the assumption of the responsibility for future payments. Invididuals at Malan, including plaintiff, prepared a feasibility study for a shopping center on the site, and by the end of 1978, Maisel decided to go forward with the shopping center.

Maisel also decided to reward certain long-term, key employees at Malan with partnership interests in the Harrisburg project. Without contributing cash or property, the employees received various partnership interests in the Harrisburg project, but, as general partners, they also assumed liabil-

ity for the cost of the property and the project. Although no formal partnership agreement was adopted, the authorization and agreement filed by the partnership provided that Maisel would be managing partner, securing financing and executing and entering into all aspects of its business.

Substantial construction on the project, known as Shawnee Square Shopping Center, began in the summer of 1979, with Malan serving as general contractor for a fee of total costs plus 8% for construction of a K mart store and the site work. For the other tenant stores, Malan ultimately subcontracted construction, serving only as construction manager for a 2% fee. Maisel itself financed approximately $1.2 million in 1979 for initial construction, prior to securing funding from third-party lenders. The Harrisburg partnership claimed a net operating loss during this developmental period in 1979 of $59,704.60.

Maisel continued to advance funds to the partnership for construction even after loans were secured from its third-party lenders, K mart Corporation and Michigan National Bank-Detroit, in February and March, 1980. By late 1980, interest on the Michigan National Bank-Detroit loan had increased to the point where the Harrisburg carrying costs exceeded the project's income from rents. Without consulting the other partners, Maisel sold the K mart building portion of the project. The sale resulted in a net profit of approximately $808,000 with net cash proceeds to Harrisburg amounting to $669,819.

Plaintiff objected to the timing of the sale which generated $830,175 of short-term capital gain to the partnership, of which his share was $68,456 taxable fully as ordinary income. Except for plaintiff, who by this time was no longer employed at Malan, Maisel made interest-free loans to the

remaining partners to cover their tax liabilities. Plaintiff instituted suit for legal and equitable relief, including dissolution of the Harrisburg partnership, appointment of a receiver, an accounting and damages. Subsequently, in March, 1981, Maisel sold an outlot parcel of the partnership property for $140,000, again without seeking the consent of the other partners. Maisel reasoned that the negative cash flow of the project necessitated the sale. On April 12, 1982, the circuit court approved the sale of the balance of the shopping center with the exception of a second outlot for the sum of $3,358,290. On that same date, Harrisburg was dissolved by the court. The circuit court then appointed a receiver to oversee the windup of the partnership affairs.

On April 30, 1982, Maisel was ordered to file an accounting of Harrisburg's partnership affairs from its inception through its dissolution. The initial accounting was filed on August 13, 1982. A supplemental accounting containing additions and corrections was filed on March 30, 1983.

Plaintiff's claims for equitable relief and for damages in the lower court alleged accounting errors and breach of fiduciary duty. In its opinion of August 22, 1983, the trial court found that plaintiff failed to meet his burden of proving that fees paid to Malan for overhead and profit were unreasonable, and that plaintiff had not shown such an identity of interest between Malan and Maisel to conclude that one entity was merely the instrumentality of the other. The court further rejected plaintiff's contention regarding usury and his assertion that the land and developmental and carrying costs of the project were either a gift or a capital contribution to the other partners from Maisel. This appeal has ensued. We affirm.

On April 30, 1982, the trial court ordered Maisel

to file a formal accounting of the Harrisburg partnership affairs from the time of its inception to its dissolution. The initial accounting was filed on August 13, 1982. Plaintiff did not file formal objections to the accounting. Instead, he retained his own accounting firm to analyze Maisel's accounting. Plaintiff's accountant prepared a separate accounting which differed primarily in the fact that it excluded from consideration nearly all receipts and disbursements by the partnership to what plaintiff alleged to be the related entities of Maisel, Malan and E. N. Maisel. Plaintiff asserted that those disbursements resulted in certain duplications of payment. These charges included payments for the land and its carrying costs, the fee to Malan and any interest reimbursement to Maisel.

This difference first came to light, according to Maisel, in January, 1983, in plaintiff's answers to Maisel's interrogatories inquiring into the amount of damages sought by plaintiff. On March 28, 1983, following an adjournment to allow Maisel to "amplify" the accounting, a supplemental accounting was filed. The supplemntal accounting consisted of nine pages of corrections and supplements to Maisel's original accounting and 29 pages of annexed schedules. Plaintiff moved to strike the supplemntal accounting on the basis that the court had not granted leave to file a supplemental accounting. Subsequently, plaintiff also argued prejudice on grounds that the supplemental accounting was not simply an amplification of the basis for reimbursements contained in the original accounting and that Maisel failed to identify the source of the information contained in its summary schedules as required by MRE 1006.

We perceive no merit to plaintiff's arguments. In Crane & Bromberg, Law of Partnership (1968),

chapter 7, § 72, p 410, an accounting is described as follows:

"A formal account or (as it is sometimes called) an accounting is more than a presentation of financial statements. It encompasses a review of all transactions, including alleged improprieties, which should be reflected in the financial statements. It resembles a trustee's accounting.

"If a partner asks his co-partners for an account and does not get it, or is not satisfied with it, he may bring an action for an accounting. This is a comprehensive investigation of transactions of the partnership and the partners, and an adjudication of their relative rights. It is conducted by the court or, more commonly, by an auditor, referee or master, subject to the court's review. Equitable throughout most of its long history, this action is well adapted to the complexity of partners' relations. But its origins lie in the mutual fiduciary obligations of the partners.

"*An accounting action is designed to produce and evaluate all testimony relevant to the various claims of the partners.*" (Emphasis added; footnotes omitted.)

Additionally, 18 Michigan Law & Practice, Partnership, § 102, p 402, states that in a suit for a partnership accounting "evidence may be admitted which is pertinent and relevant to the issues framed by the pleadings". See, also, *Equitable Trust Co v Karos,* 309 Mich 565; 16 NW2d 76 (1944), and *Arthur v McCallum,* 195 Mich 618; 162 NW 118 (1917).

We are persuaded here that the presentation to the court of Maisel's supplemental accounting and annexed schedules served to facilitate the court's comprehensive review of all of the partnerships' sometimes complex and complicated transactions. Once Maisel became aware that plaintiff's claim for damages asserted specific complex financial and bookkeeping improprieties in this case, it

became incumbent upon Maisel to focus upon those transactions and to set forth whatever schedules and corrections were necessary to present all the relevant information for the trial court's analysis. We also do not believe that plaintiff was unfairly prejudiced by the timing or format of this information, or that its admission offended the purpose or spirt of MRE 1006.

Next, plaintiff urges that the managing partner, as a fiduciary, must prove the propriety of its actions. Thus, plaintiff contends that, even though Maisel had the burden of establishing the correctness of each disputed disbursement, the lower court nevertheless required him to prove as improper the charge for the cost of land, the alleged loans from or through Maisel, and charges for Malan's overhead and profit. We find this contention to be without merit.

Preliminarily, we note that our reveiw of an equitable accounting is *de novo,* although the lower court's findings will not be disturbed unless the evidence clearly preponderates in the other direction. *Mousseau v Walker,* 356 Mich 373; 97 NW2d 110 (1959). *Cf., Allen v Kelley,* 65 Mich App 642; 237 NW2d 594 (1975) (employing an abuse-of-discretion standard).

Plaintiff contends that all doubts as to the accounting must be resolved against the managing partner. However, this rule applies only where the partnership's business records are incomplete. 68 CJS, Partnership, § 432(a), p 970. In the instant case, the lower court expressly found that Maisel had established the accuracy and correctness of its accounting. Upon that showing, the burden of proof as to the controverted entries then shifted to the plaintiff. We now turn to plaintiff's specific challenges to the accounting.

Plaintiff asserts that the 13-acre site for the

shopping center was a gift to the Harrisburg partnership from Maisel, or, alternatively, that it was a capital contribution upon which Maisel was entitled to claim only a return of the land cost without interest after all liabilities had been paid. The trial court rejected plaintiff's argument on the basis that

"there was no testimony or evidence presented at trial which would have established by a preondernance of the evidence that Maisel & Associates of Michigan had the requisite donative intent to gift the land to Harrisburg properties. Such an advance, therefore, cannot consitute a gift".

Although no written partnership agreement was executed for Harrisburg which might evidence the nature of Maisel's contribution of the land to the partnership, the facts do not support plaintiff's argument that the land was either a gift or a capital contribution. Harrisburg's 1979 statement of financial position clearly supports Maisel's assertion that Maisel intended to give the Harrisburg partners the Harrisburg project subject to outstanding liabilities. The statement showed the partnership's liability as a loan payable to Maisel in the amount of $1,709,780, including fixed assets of construction and value of the land. Plaintiff did not dispute the correctness of this statement of financial position at the time, and, in fact, used the figures to take an individual tax loss for the 1979 tax year.

Plaintiff erroneously represents to this Court that there was no direct testimony on the question of whether the land was a gift, and references to the deposition testimony of Hiram Dorfman are taken completely out of context. In fact, five of the individual partners testified that the land was not a gift.

Furthermore, as the lower court correctly held below, a contribution by a partner can either be by way of "capital" or advances to the partnership property, with any contribution of capital in excess of the agreed-upon amount being treated as an advance subject to repayment with "interest from the date of the payment or advance". MCL 449.18(c); MSA 20.18(c). The evidence produced below indicated that it was the intention of Maisel (and the understanding of the majority of the partners) that the contribution of land bear interest. Accordingly, we agree with the lower court that the fact that there was not a formally-executed note evidencing such an intent is not dispositive, where, as here, there was ample testimony that the intention of the partners was that the advancement bear interest. See *Munroe, Boyce & Co v Ward,* 207 Mich 369; 174 NW 285 (1919). The general rule is that "the burden of proving that a gift was made, including the existence of all the elements necessary to its validity, is upon the donee or the party asserting the gift". 38 Am Jur 2d, Gifts, § 92, p 890. Thus, the trial court was correct in its ruling that plaintiff had the burden to prove that the land was a gift; and we cannot say that the lower court erred in finding that plaintiff had failed to meet that burden.

Plaintiff also attempted to show that certain loans by Maisel were never made, or that, if they were made, they were unnecessary and the interest charged was excessive. While plaintiff concedes that Maisel provided necessary funds to Harrisburg in the early stages, he asserts that by March, 1980, the partnership had sufficient funds to pay back Maisel, but that Maisel, as managing partner, continued to make (or claimed to make) loans amounting to some $580,920.

The trial court found that the supplemental

accounting, evidence and testimony demonstrated the economic necessity of the loans to the partnership. The court stated that plaintiff's expert testimony did not conclusively establish that funds were borrowed in excess of partnership needs, and, therefore, plaintiff did not meet his burden in establishing any impropriety.

The burden of proof was properly placed on plaintiff. See *Levy v Leavitt,* 257 NY 461; 178 NE 758 (1931). Inasmuch as the propriety of the type of transaction at issue here is well established, *Levy, supra,* and our review of the lower court's findings of fact is deferential, we will not disturb the ruling below. We cannot say that the facts clearly preponderate toward a contrary result or that the lower court abused its discretion.

As to plaintiff's usury claim, the lower court rejected such based upon the usury statute, MCL 438.32; MSA 19.15(2), which protects the "borrower" and empowers him to maintain an action to recover on an usurious interest rate. Since plaintiff was not the "borrower", the court found that he could not unilaterally maintain an action for the partnership. Maisel charged Harrisburg interest on funds it advanced to the project after January 1, 1979, at a rate between 2 and 2.5% above prime. We agree with the lower court that plaintiff was not entitled to maintain an action for usury.

Usury is a personal defense which can only be asserted by the "borrower" of the funds. *Tuxedo Enterprises, Inc v Detroit Trust Co,* 272 Mich 160, 167; 261 NW 283 (1935); *Dimmitt & Owens Financial, Inc v Realtek Industries, Inc,* 90 Mich App 429, 436; 280 NW2d 827 (1979). In this case, plaintiff alone has complained that the interest rate is usurious. He maintains that he may do so based on principles of privity since he occupies a position

of mutual agency and joint liability as to the loan and interest. His theory is that, since repayment could ultimately be sought from him, it can only be concluded that he was a co-borrower of these funds. However, we agree with Maisel that such a "principal-surety" relationship exists as to a usury claim, if at all, only after the partnership has failed to satisfy the debt and plaintiff is called upon to repay the loans himself. To do otherwise would pervert the operation of the general rules of partnership. Specifically, MCL 449.18(h); MSA 20.18(h) provides:

> "Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement between the partners may be done rightfully without the consent of all the partners."

Certainly, Maisel's decision, as managing partner with control over the ordinary matters of the partnership business, to incur debt is subject to majority vote and control rather than requirements for unanimity. Likewise, any attempt to avoid repayment based on usury claims would also be a matter of majority control. To give credence to plaintiff's privity argument would upset this established partnership principle of majority rule in ordinary business matters. Accordingly, we reject plaintiff's usury claim.

Plaintiff's penultimate contention on appeal is that the lower court erred in finding no identity of interest between Maisel and Malan and in upholding certain fees paid to Malan. More specifically, plaintiff complains that the payment of Malan's fee for "overhead and profit" for services as a general contractor and construction manager on the Harrisburg project was, in substance, compen-

sation to Maisel, the managing partner, through its alter ego for services rendered in the business of the partnership that was not agreed to by the partners, and thus was improper remuneration, in violation of MCL 449.18(f); MSA 20.18(f).

The lower court reviewed trial testimony which established that Malan received fees for overhead and profit at 8% as general contractor on the K mart project and 2% as construction manager for the tenant stores. The court found no evidence that Malan and Maisel were anything but separate and distinct legal entities and opined that plaintiff had not come forward with evidence to support a finding that Malan was merely an instrumentality of Maisel. These findings are supported by the evidence. We will not overturn them on appeal.

In any event, this Court has recently held in *Maki v Copper Range Co,* 121 Mich App 518, 524-525; 328 NW2d 430 (1982), *lv den* 417 Mich 1030 (1983), that there are three requisites to piercing the corporate veil and finding an identity between business entities. First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff. Even assuming that there was a sufficient identity of interest between Maisel and Malan, which we do not concede, plaintiff nevertheless failed to establish the second and third prerequisites. There is nothing in the record to support a finding of fraud or wrongdoing, and the alleged loss or injury is based upon the paying of an admittedly reasonable fee to the general contractor and construction manager for services rendered. This contention is without merit.

Finally, plaintiff seeks attorney fees, positing

that the substantial attorney and accounting fees incurred by him resulted in part from Maisel's failure to maintain separate bank accounts and proper accounting records and that these costs should be considered a common charge and be borne by all of the partners in proportion to their partnership interests. We disagree.

The lower court granted summary judgment in favor of Maisel, dismissing plaintiff's claim for recovery *on behalf of all the Harrisburg partners.* The trial court noted below that all of the individuals except plaintiff had filed an affidavit accepting the supplemental accounting and releasing all claims against Maisel. Thus, even if plaintiff's underlying contention were valid, he never represented the partnership or any of the other partners and never filed a class action or a derivative suit as a representative, so that it is clear that, from the outset, plaintiff alone opposed the majority in the partnership transactions. Under these circumstances, the other partners should not bear the cost of attorney fees.

Affirmed.