In re WOLENSKY'S LIMITED
PARTNERSHIP, Debtor.

FEDERAL KEMPER LIFE
ASSURANCE CO.,
Plaintiff,

v.

WOLENSKY'S L.P., et al., Defendants.

Bankruptcy No. 92–01435.
Adv. No. 93–0025.

United States Bankruptcy Court,
District of Columbia.

Jan. 27, 1994.

Jeffrey M. Sherman, Trustee, Washington, DC, for debtor.

Robert N. Levin, Schweitzer, Bentzen & Scherr, Washington, DC, for movant.

Bryan S. Ross, Washington, DC.

David M. Katinsky, U.S. Dept. of Justice, Tax Div., Washington, DC.

Mary C. Zinsner, Mays & Valentine, Alexandria, VA.

*DECISION PARTIALLY GRANTING UNITED STATE'S MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT IN FAVOR OF THE TRUSTEE*

S. MARTIN TEEL, Jr., Bankruptcy Judge.

In its prior decision in the above-captioned adversary proceeding, *In re Wolensky's Limited Partnership,* 163 B.R. 615 (Bankr.D.D.C. 1993), this court set forth an analysis of the issues it found to be pertinent to the resolution of who was entitled to the insurance

proceeds at issue.[1] One such issue was whether Sullivan, acting for the general partner of Wolensky's L.P., was capable of acting on behalf of the limited partnership with respect to such changes in the policy absent authorization by the partnership. *Id.* at 621.

This court previously determined that if the transfer by Sullivan was not related to the ordinary business of the partnership, Sullivan's act of transferring the policy and changing the beneficiary was *ultra vires* and thereby ineffective to deprive the partnership of its interest in the policy. *Id.* at 621–22. The court further found that it would be difficult, if not impossible, to conclude that the transfer of the policy, without consideration, to Sullivan's family member was an act effectuating the partnership's business. However, because only the Balls had moved for summary judgment, the court declined at that time to grant summary judgment in favor of the trustee or the United States.

With the benefit of extensive discovery, the United States, acting on behalf of the Internal Revenue Service ("IRS"), has now moved for summary judgment, contending that not only is the limited partnership entitled to the proceeds as opposed to the Balls or Mrs. Sullivan, but that the IRS is entitled to the funds as opposed to the trustee of the limited partnership's bankruptcy estate.

For the reasons below, the United States' motion for summary judgment is partially granted to hold that the Balls and Mrs. Sullivan are not entitled to the funds but denied insofar as the request for a ruling that the IRS is entitled to the funds instead of the trustee. Further, the court will grant summary judgment sua sponte in favor of the trustee for Wolensky's L.P.

1. Rather than repeating its earlier analysis, the court incorporates its prior opinion in this decision.

2. As the Limited Partnership Agreement (the "Agreement") makes clear, the business of the partnership constituted the operation of a restaurant and carrying on any and all activities necessary, proper and convenient or advisable in connection therewith or related thereto. 163 B.R. at 619. Alan Borut, a former director and treasurer of Wolensky's Inc. also stated that "[t]he ex-

## DISCUSSION

### A. The Balls' Interest as Opposed to the Limited Partnership's

■ In its earlier decision, the court found that "[n]o evidence had been presented which suggests that Sullivan's change in ownership and beneficiary was within the normal course of the partnership's business." 163 B.R. at 622. Although the Balls have now had the opportunity to introduce evidence establishing that the transfer did effectuate partnership business, they have failed to do so. There is simply no evidence even remotely suggesting that the transfer in some way advanced the purposes of the partnership.[2] To the contrary, the evidence establishes that the transfer was outside the ordinary partnership business. The Balls do not contest that Sullivan transferred the policy to his wife, who was not involved in the partnership, without consideration. Nor have they asserted that the partnership business was not as described in the Agreement and by Mr. Borut.[3] Such an act is in no way necessary, proper or advisable to the operation of the partnership business—the operation of Wolensky's restaurant. Accordingly, this court finds that the transfer was not within the ordinary course of partnership business.

■ In response, however, the Balls appear to contend that Sullivan was authorized to make the changes to the policy. They allege that in 1985, Sullivan agreed to provide the insurance policy to protect certain investors in the event of his death provided that after the first two years of the restaurant's operations, he could "take back" the policy. (Balls' Resp. at 2.) In essence, the Balls claim that Sullivan pledged the policy to the partnership as collateral securing the

clusive business for both Wolensky's Inc. and Wolensky's Limited Partnership was the operation of a restaurant by the name of Wolensky's." (Borut Decl. ¶ 2, U.S. Mot. for Summ. J., Ex. 1.)

3. The Balls' assertion that "it has just come to the attention of the Balls that the business records of Wolensky's Limited Partnership and Wolensky's Inc. have apparently been destroyed," (Balls' Resp. at 1), is irrelevant to the issue of whether Sullivan's actions were in the ordinary course of the partnership business.

investors/guarantors for a limited period of two years. However, the Balls have failed to provide any evidence in support of this purported arrangement.

The Balls offer an affidavit from Timothy Sullivan, dated December 6, 1993, in support of the notion that the policy was to be changeable at Sullivan's option after two years. (Balls' Resp. ¶ 5.) However, it is clear upon reading the affidavit that the two year limitation mentioned by Timothy Sullivan refers to a policy, different from the one at issue, that never came to fruition. (Sullivan Aff. ¶ 5, Balls' Resp., Ex. 1.) Thus, the Affidavit fails to provide any evidence as to the existence of the alleged arrangement. In addition, the assertion that such an arrangement existed is belied by evidence suggesting that Sullivan knew that he was deceiving the other partners in and creditors of the partnership in his dealings with the insurance policy. Wolensky's bookkeeper, Donna Clancy Anthony, did not learn until after the fact, and then only indirectly, that Sullivan had unilaterally transferred the policy. (Clancy Anthony Dep. at 34–35, 61–62, U.S. Mot. for Summ. J., Ex. 6.) Upon learning of the transfer, Ms. Anthony expressed to Sullivan her understanding that the purpose of the policy was to protect the partnership. Sullivan responded that while the policy in the beginning belonged to Wolensky's, "it is mine now to do with what I want." (*Id.* at 62.) Sullivan's actions, however, contradict that belief. As late as May of 1991, six years after the policy was obtained, the evidence suggests that Sullivan himself understood the policy to be owned by the partnership. On both forms sent to Kemper requesting a change of ownership and beneficiary, the first in June of 1990 and the second in May of 1991, Sullivan himself listed Wolensky's L.P. as the owner of the policy. (Crawley Dep. at 58, U.S. Mot. for Summ. J., Ex. 3; Thomas Dep. at 11, U.S. Mot. for Summ. J., Ex. 4.) In addition, in a suicide note to his wife, Sullivan told her not to disclose the existence of the insurance policy to anyone. (U.S. Mot. for Summ. J., Ex. 5 (under seal).)

Even if the court assumes that Sullivan believed that he was free to treat the policy as his own, that belief does not equate to authorization. And there is no evidence in the record suggesting that he was authorized to treat the policy as his own at any time, let alone after two years. Further, a finding that Sullivan was free to "take back" the policy and treat it as his own would entirely defeat the expressed purposes of the policy. The Corporate Minutes in Lieu of a Meeting of Wolensky's Inc. Board of Directors, dated May 24, 1985, expressly provided that the proceeds from any keyman insurance policy were to be used either to pay debts guaranteed by principals in the corporation or partners in the limited partnership or for other corporate purposes. (Balls' Resp., Ex. 2.) Thus, the policy was intended to either protect guarantors of the corporation's or limited partnership's debts or to benefit the corporation. Moreover, Borut, the treasurer and a director of Wolensky's Inc. until 1990[4] who was also a personal guarantor on certain debts of the limited partnership, stated that "[t]o the best of my knowledge, there was no subsequent amendment to the bylaws, board of directors resolution, or any other corporate action which modified or changed" the intended purpose of the policy. (Borut Decl., ¶¶ 1, 7–9.)

Despite the numerous documents produced and depositions taken in this proceeding, the Balls have offered nothing more than the bare assertion that the policy at issue was merely pledged to the partnership for two years subject to Sullivan's right to "take back" the policy after that period lapsed.[5] And a bare assertion is not enough to establish a genuine issue of material fact sufficient to bar a grant of summary judgment.

■ The Balls' statement that they will be asking for a missing witness rule due to the allegation that the business records of Wol-

---

4. Borut resigned on August 15, 1990, which was after Sullivan's first attempt in June of 1990 to change the ownership and beneficiary of the policy.

5. Having alleged the existence of such an arrangement at such a late stage in this proceeding, this court would expect the Balls to be able to point to some evidence produced in discovery that would justify their assertion. However, no such evidence has been introduced.

ensky's L.P. and Wolensky's Inc. have been destroyed is insufficient to bar a grant of summary judgment in this case. The Balls have simply alleged that the documents have been destroyed without providing evidence of the circumstances of the destruction, for example, who destroyed them and the motivation for such destruction. Nor have the Balls stated what relevance they believe those documents would have to the case or to what issue those documents would apply. Moreover, any inference that arises "does not amount to substantive proof and cannot take the place of proof of a fact necessary to the other party's case." *See Battocchi v. Washington Hospital Center,* 581 A.2d 759, 765 (D.C.App.1990) (citing *Burkowske v. Church Hosp. Corp.,* 50 Md.App. 515, 439 A.2d 40, 45 (1982), quoting *Maszczenski v. Meyers,* 212 Md. 346, 129 A.2d 109, 114 (1957)). And as the court has expressed in this opinion, the Balls have failed to provide any evidence in support of their allegation that Sullivan was authorized to make the changes at issue. Therefore, the Balls are unable to rely on this inference to bar the grant of summary judgment. *See Burkowske,* 439 A.2d at 45 (rule applies to determining whether sufficient evidence has been produced in deciding summary judgment motion). Additionally, the Balls had ample opportunity to examine those documents at issue, having known as of April 6, 1993 that the United States was subpoenaing them for examination (*see* U.S. Reply to Balls' Opp. to Mot. for Summ. J., Ex. A) and having themselves known of the existence of such records at least as early as July 23, 1992 (*see* U.S. Renewed Motion to Disqualify, Tr. 4, Ex. 20 (under seal)). The Balls do not contend that they did not have access to these documents prior to their destruction.

■ The Balls further contend that because Sullivan paid money to Wolensky's[6] which in turn paid the premiums, he retained an equitable interest in the policy that he could "redeem" after the two year period expired. This argument has no merit. First, there is simply no evidence, as discussed above, indicating that the policy was only to belong to the partnership for two years. Second, the Balls' contention that Sullivan's act of advancing funds to Wolensky's to pay the premiums somehow gave Sullivan ownership of the policy is erroneous. Ms. Clancy stated:

> Mr. Sullivan paid the premiums on that policy through Wolensky's. He would give Wolensky's the funds and Wolensky's would then write a check to the insurance company for the premium payments.

(Balls' Resp., Ex. 3.) Even if Sullivan did contribute his own personal funds to the corporation or the limited partnership so that it could pay the premiums, that infusion of capital is properly viewed as either a capital contribution or an advance, that is, a loan. *Nogueras v. Maisel & Assoc.,* 142 Mich.App. 71, 369 N.W.2d 492 (1985) (contribution by partner can either be by way of capital or advances); *Park Cities Corp. v. Byrd,* 522 S.W.2d 572, 575 (Tex.Civ.App.1975) (whether advance by partner is a loan or contribution is question of fact). Thus, when Sullivan "gave" the funds to Wolensky's as Ms. Clancy stated, those funds became property of either the corporation or the partnership which was then used to pay the insurance premiums. That Sullivan may have made such infusions of capital did not give him any personal interest in the policy, but rather, at most, gives rise to a claim for repayment against the entity in which he contributed the funds. *King v. Evans,* 791 S.W.2d 531, 533 (Tex.Ct.App.1990) ("Advances of money to partnership by one partner to discharge partnership obligations are nothing more than loans to the partnership, and the party advancing them becomes a creditor."); *Retzke v. Larson,* 166 Ariz. 446, 803 P.2d 439 (1990) (partner lending money to limited partnership has same rights and obligations with respect to money loaned as do other creditors). Thus, the evidence establishes that the premiums were paid with partnership or corporate funds at least up to the time of the alleged lapse.[7]

---

6. It is unclear whether Wolensky's refers to the corporation or the limited partnership.

7. Although it has been established that Sullivan through a company owned by him paid the premiums required to prevent the policy from expiring, the limited partnership remained the owner

■ For the reasons set forth in this court's earlier opinion, 163 B.R. at 623–25, the policy, initially purchased at the expense of and for the benefit of Wolensky's L.P., was partnership property. *See Gerstel v. Arens*, 143 Fla. 20, 196 So. 616 (1940) (insurance policy on partner's life procured by partnership, premiums paid by partnership and payable to partnership is a partnership asset). Thus, the change of ownership and beneficiary, which constituted a transfer of partnership property not in the ordinary course of partnership business, was *ultra vires* and thereby ineffective to deprive the partnership of its interest in the policy. It follows that the limited partnership was the proper beneficiary and, at the time of Sullivan's death, the partnership would have been entitled to the proceeds. Given that Sullivan died before the bankruptcy petition for the limited partnership was filed, the proceeds would have become property of the limited partnership's bankruptcy estate.

Accordingly, this court finds that the limited partnership is entitled to the proceeds as opposed to the Balls and Mrs. Sullivan. Thus, the only remaining issue to be decided is whether the IRS' interest in the proceeds is superior to that of the limited partnership's bankruptcy estate.

### B. *The IRS' Interest as Opposed to the Trustee's Interest*

■ The United States contends that a levy upon cash or its cash equivalent amounts to transfer of ownership to the IRS and, therefore, because the IRS levied upon the insurance proceeds before the bankruptcy petition was filed, those proceeds never became part of the bankruptcy estate. Although the courts are split on this issue, this court agrees with those cases holding that a levy upon property, whether tangible or intangible, does not deprive the debtor of all interests in the property and therefore the property is properly viewed as property of the estate. *See In re Metro Press, Inc.*, 139 B.R. 763 (Bankr.D.Mass.1992) (collecting cases).

■ A levy is not a transfer of ownership, *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 210, 103 S.Ct. 2309, 2316, 76 L.Ed.2d 515 (1983), and this holds true in the case of intangible as well as tangible property. *In re Challenge Air Intern., Inc.*, 952 F.2d 384, 387 (11th Cir.1992); *Metro Press*, 139 B.R. at 764. Significantly, the IRS must still collect on the levy by way of sale of the asset seized or by way of receipt of payment of the obligation seized before ownership can be said to have transferred.[8] Specifically, the debtor may pay the tax liability from other funds (or the IRS may collect it from other funds), terminating the levy proceedings. *See* 26 U.S.C. § 6337(a). Alternatively, the IRS may decide that it will facilitate collection to release the levy. *See* 26 U.S.C. § 6343(a). For example, the IRS may decide that the account receivable may be more productive to tax collection efforts if it allows the account receivable's proceeds to be used to sustain the debtor's going concern value. Finally, if the debtor succeeds in challenging the tax liability before it is honored the levy is no longer effective. All of this amply demonstrates that a levy, even on an intangible, does not divest the debtor of its equitable interest in the property. The debtor is not relegated to merely bare legal title in the property. *Challenge Air*, 952 F.2d at 387 n. 1 (citing *Whiting Pools*, 462 U.S. at 204 n. 8, 103 S.Ct. at 2313 n. 8).

Indeed, no provision bars the debtor from enforcing its right in the account receivable (subject to any duty to protect the government's superior collection rights in the proceeds). Specifically, under 26 U.S.C. § 6332(e), "the duty owed the debtor is extin-

---

and beneficiary of the policy for the reasons discussed in this court's earlier decision, 163 B.R. at 623–25.

8. In holding that a levy alone does not terminate ownership, the court does not find it necessary to agree with those decisions holding that the IRS must sell an account receivable levied upon. *See In re AIC Industries, Inc.*, 83 B.R. 774 (Bankr.

D.Colo.1988). In the case of an account receivable paid over to the IRS a sale would clearly be unnecessary. Even when the obligor fails to make payment, the case law illustrates that the IRS may assert liability under 26 U.S.C. § 6332(d)(1) instead of selling the account receivable. *See, e.g., U.S. v. Nat'l. Bank of Commerce*, 472 U.S. 713, 721, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565.

guished," *Phelps v. United States,* 421 U.S. 330, 335, 95 S.Ct. 1728, 1732, 44 L.Ed.2d 201 (1975), only upon a surrender to the IRS.

The debtor might sue the account obligor for legitimate practical reasons: the statute of limitations on its suing the obligor might be about to lapse; the debtor might be able to sue a financially shaky obligor more swiftly than the Secretary could investigate the advisability and authorize a 26 U.S.C. § 6332(d) suit and the Attorney General commence such a suit (*see* 26 U.S.C. § 7401) and thereby maximize the value of its and the government's interests in the account receivable; the debtor might be in the midst of successfully persuading the IRS to abate its assessment or for other reasons to release its levy; and the debtor might be in the midst of making payment of the obligation from other sources. Nothing in the Internal Revenue Code proscribes such a suit.

█ Although *In re Sigmund London, Inc.,* 139 B.R. 765, 768 (Bankr.E.D.N.Y.1992), holds that the debtor has no right to sue after levy, it fails to cite any provision that specifically terminates this right. That decision and others of like effect appear to confuse the government's superior collection rights with the question of whether the debtor's equitable interest is terminated. A levy gives the IRS a superior right, as against the taxpayer, in any fund or account receivable levied upon. But that superior right does not terminate the taxpayer's equitable interest in the property. At most, for various obvious practical reasons, it may usually *defeat* the taxpayer's ability to enjoy the fruits of that right. With the intervention of a chapter 11 bankruptcy case under chapter 11 of the Bankruptcy Code the trustee (or a debtor-in-possession) has a basis for enjoying that right and employing the proceeds in the debtor's business by providing the government's lien adequate protection (for example, by posting replacement collateral). Similarly, in chapter 7 the trustee is entitled to employ the proceeds to advance the congressional policies concerning tax liens embodied in 11 U.S.C. §§ 724 and 726(a)(4).

Finally, if an obligation levied upon generates interest accruals or dividends between the date of levy and the date the levy is honored by payment of the obligation to the Internal Revenue Service, the Internal Revenue Code would treat the interest accruals or dividends as income to the debtor for income tax purposes because they were earned before the levy was honored and the debtor's ownership terminated. Indeed, if the interest or dividends accrued at a higher rate than interest on the tax debt, once the levy was honored there might be an excess amount payable to the debtor, after payment of the tax debt, even though that excess did not exist as of the instant of the levy being made.

For all of these reasons it cannot be said that an IRS levy upon an obligation owed the debtor deprives the debtor of all interest in the obligation. In this case, even though the IRS served its notice of levy upon Kemper on July 29, 1992, which was prior to the filing of the bankruptcy petition, until those proceeds were turned over by Kemper to the IRS, the levy did not transfer ownership of those proceeds to the IRS. Accordingly, the proceeds are properly viewed as property of the estate pursuant to 11 U.S.C. § 541.

### C. *Disallowance of Plaintiff's Interpleader Action Attorney Fees*

█ The federal tax liens in this case exceed the amount that Kemper owes under the insurance policy. Accordingly, Kemper is not entitled to any attorney fees out of the interplead funds. *United States v. Equitable Life,* 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); *United States v. Ball Construction Co.,* 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958); *United States v. Liverpool & London Ins. Co.,* 348 U.S. 215, 217, 75 S.Ct. 247, 248, 99 L.Ed. 268 (1955); *Cable Atlanta, Inc. v. Project, Inc.,* 749 F.2d 626 (11th Cir.1984) (citing additional cases); *Cavalier Service Corp. v. Wise,* 645 F.Supp. 31 (E.D.Va.1986) (citing additional cases). This holds true even to the extent that the trustee avoids the government's lien under 11 U.S.C. § 724(a): under 11 U.S.C. § 551 the lien is preserved for the benefit of the estate. Accordingly, Kemper's motion for an award of attorneys fees will be denied.

### D. *Summary Judgment in Favor of Trustee*

 Because the court has concluded that the trustee for Wolensky's L.P. is entitled to the proceeds as opposed to the Balls, Mrs. Sullivan and the IRS, the court will *sua sponte* enter summary judgment in favor of the trustee. *See In re Alcom America Corp.,* 154 B.R. 97, 103 (Bankr.D.D.C.1993) (summary judgment *sua sponte* appropriate as long as losing party was on notice to come forward with all of its evidence). Therefore, the court will enter an order instructing the clerk to turn over the proceeds to the trustee.

Because the funds are subject to federal tax liens, those liens are entitled to adequate protection. The trustee shall be required, pending further order in the main case, to keep the funds in an interest-bearing insured account separate from other estate funds unless the United States and the trustee agree otherwise. Beyond that, no further adequate protection is necessary. The tax liens will give the government's non-penalty tax claims priority over general unsecured creditors and over tax creditors holding only unsecured claims entitled to priority under 11 U.S.C. § 507(a)(7). But by virtue of 11 U.S.C. § 724(b), the funds will be available to pay administrative and other non-tax priority claims first and by virtue of 11 U.S.C. §§ 724(a) and 726(a)(4) any penalty claims secured by the tax liens will be paid only after other claims in the case.

Subjecting the tax liens to §§ 724 and 726(a)(4) does not deprive the tax liens of adequate protection. *Contra, Sigmund London,* 139 B.R. at 772. It is simply an application of the funds that are subject to the liens in accordance with congressional intent. To hold that the requirement of adequate protection in 11 U.S.C. § 363(e) prevents the use of 11 U.S.C. §§ 724 and 726(a)(4) would render those latter sections a nullity, an absurd result that Congress could not have intended. Instead, I view §§ 724 and 726(a)(4) as illustrating that the debtor's ownership of an account receivable levied upon by the IRS can have significant meaning despite the relatively hollow quality that such ownership interest might have outside bankruptcy.