# Staunton.

T. Perry Gilmer, et als. v. R. F. Fleenor.

September 20, 1928.

The opinion states the case.

*Bird & Lively*, for the appellants.

*B. T. Wilson*, for the appellee.

Prentis, C. J., delivered the opinion of the court.

R. F. Fleenor, who had been one of a copartnership called Klondike Coal Company, filed his bill praying for a settlement of the partnership business, and the payment to him of the amount alleged to be due and unlawfully withheld from him by his copartners.

The pleadings raise and the decrees determine these issues:

1. The bill alleges that Scott Litton was one of the four partners. The answers deny this, and aver instead that the complainant, Fleenor, together with T. Perry Gilmer, P. H. Smith and J. W. Jones (who was a brother-in-law of Litton), constituted the partnership. The evidence and the commissioner's report based thereon clearly establish the facts so averred in the answer, and that Scott Litton was never a member of the copartnership As to this, the decree so adjudging is plainly right.

2. The plaintiff claimed that the partnership and his interest therein continued thereafter until, say, August 1, 1923, while the defendants claimed that his membership interest and the copartnership ceased February 28, 1923.

These facts appear: Clinchfield Coal Corporation (of which the plaintiff, Fleenor, and T. Perry Gilmer were employees) owned certain coal lands which had been leased to Dixie Splint Coal Company (of which P. H. Smith and J. W. Jones were employees). With the consent of their respective employers, Clinchfield Coal Corporation and Dixie Splint Coal Company, and merely as a friendly favor, these four employees were permitted to form the copartnership for the mining and selling of coal to be taken from the leased property. They borrowed some of their equipment from the Dixie

Company, paid nothing for the mining privilege, and were only required to pay the royalty of fifteen cents per ton of coal removed, due by the lessee company to the lessor company. Each contributed $250.00 capital, and the venture proved very profitable. The testimony clearly shows, unless all but the plaintiff's own is disregarded, that the conditions imposed and accepted by the copartners were, that whenever any of these employees for any reason left the service of either of the employer corporations, his interest in this coal mining copartnership should thereupon cease and determine; and also that Scott Litton, the general manager of the Dixie Splint Coal Company, might at any time and in his discretion withdraw the privileges granted. The partnership was dissolved because and when the plaintiff, Fleenor, left the service of Clinchfield Coal Corporation, February 28, 1923. He first asked Scott Litton to allow the existing arrangement to continue, notwithstanding the agreement, and, upon this being refused, to permit its continuance for one month longer, until March 31st. Both requests were positively deni d. The other three, with the consent of Scott Litton, thereafter conducted a similar business in which Jones had one-half interest and Gilmer and Smith one-fourth interest each, until August 1, 1923.

The commissioner reported and the trial court held that the plaintiff ceased to be a member of the copartnership February 28, 1923. Scott Litton's assent as general manager of the lessee company being essential, that copartnership by its terms then terminated. That this is the proper conclusion is manifest.

The accounts were simple. The amount of the undistributed share of the assets then due to the

plaintiff, Fleenor, arising out of the transactions of that copartnership and prior to February 28, 1923. when it terminated and his connection therewith ended. was well known to them all, and is definitely shown by the books. But for his unreasonable claim, the amount then due him could and might have been promptly paid, though it was never tendered and in view of the claim of P. H. Smith, one of the partners, subsequently asserted (hereafter to be discussed), this may now be doubted. The reason then assigned for not paying him the amount so certainly due him was that he refused to waive his contention that he had the right to continue as a partner and to share in the future profits of a continued business. This is not a valid reason for withholding a settlement. If he had abandoned his illegal claim, or they had then conceded his legal right to payment, without condition, it is, we think, altogether probable that this litigation would never have resulted. The unfairness of any of the parties was bad enough, their respective rights being so clear, and the stubbornness of all of them has been an expensive indulgence to all—certainly not worth its cost.

3. Another issue is raised. In the joint answer of the other three copartners, T. Perry Gilmer, P. H. Smith and J. W. Jones, the appellees here, it is asserted that the copartnership is indebted to P. H. Smith (one of the partners) for keeping the books and selling the coal. A salary of $50.00 per month, as bookkeeper, for seven months, and twenty-five cents per ton for selling the coal is claimed. These two items aggregate $2,693.66. The books showed, as the result of the firm's business up to February 28, 1923, that Fleenor had already been paid $3,000.00 out of the net profits, and that his distributive share of the joint assets then

amounted to $1,546.87 in addition. This was then conceded, and it is even now argued for the appellants that it would have been all paid but for Fleenor's illegal claim that he continued to be a member of the firm after the suit was instituted, however, and the Smith claim had been so asserted and supported by the other defendants, they claimed that Fleenor's distributive share should be proportionately reduced, *i. e.*, by one-fourth of Smith's claim $673.42, or from $1,546.87 to $873.45. There was no averment or proof of any contract to pay Smith for his services, but it was said that these services to the copartnership were quite valuable and reasonably worth the sums so charged by him. There is not merely the failure to prove any contract for such compensation, but the testimony shows affirmatively that there was no such contract, express or implied.

The legal question thus presented is quite free from difficulty. It is the legal duty of every member of a copartnership (unless relieved therefrom by contract, express or implied) to devote his time and business energies to the partnership affairs, and it follows that he is not entitled to compensation therefor, however valuable they may be, unless there is a contract therefor.

In *Gay* v. *Householder*, 71 W. Va. 277, 76 S. E. 450, Ann. Cas. 1914C, 297, the rule is expressed succinctly thus: "The general rule is well established, that one partner is not entitled to compensation for his services in attending to partnership affairs unless there be a contract therefor, express or implied."

This rule passed the realm of debate long before it was embodied in the uniform partnership act, clause (f), section 18, Acts 1918, page 546; Code, section 4359, (18), (f). *Forrer* v. *Forrer*, 29 Gratt. (70 Va.)

138; *Frazier* v. *Frazier*, 77 Va. 792; *Scott* v. *Boyd*, 101 Va. 28, 42 S. E. 918; 20 R. C. L. 877.

The circuit court followed this rule and its decree in favor of Fleenor for the principal sum of $1,546.87, as of February 25, 1923, without any deduction for the illegal demand of Smith, is plainly right.

■ 4. In what we have already said we have either expressly or by necessary implication disposed of all but two of the several assignments of error, and to these we now refer.

(a) It is argued that the court erred in entering a personal judgment against the defendants for the principal sum, with interest from February 28, 1923.

As has already been stated, the accounts were simple, the balance due the plaintiff was shown by the books, there were no debts, and though the money was in hand, or immediately available, this balance, so clearly ascertained, was illegally withheld from him, and he was forced to sue for a settlement. Under these conditions, the defendants were his debtors, and the plaintiff was entitled to receive the definite amount manifestly due him in cash at the time the copartnership ended. The amount so due being certain, and the dissolution being caused without fault, in accordance with and not in contravention of the partnership agreement, his right to a settlement is determined by section 38, clause (1), of the uniform partnership act, Acts 1918, page 551, Code, section 4359, (38), (1):

"When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount

owing to the respective partners. But if dissolution is caused by expulsion of a partner, *bona fide* under the partnership agreement, and if the expelled partner is discharged from all partnership liabilities either by payment on agreement under section thirty-six (2), he shall receive in cash only the net amount due him from the partnership.''

The defendants might have avoided this liability for interest, wholly or partly, before the suit was instituted, or afterwards, by paying into court the sum retained by them. The plaintiff has long been entitled to the use of the fund, and the court did not err in adjudging them liable for interest thereon.

(b) It is contended that the court should not have required the defendants to pay the costs. It may be, in view of the facts of this case, that the costs should have been apportioned, or paid out of the partnership funds. This burden, too, might have been certainly shifted if the defendants had not wrongfully retained and controlled the entire fund, that part in controversy as well as that conceded to be due, for instead they could have either tendered it to the plaintiff or paid it into court. This court rarely revises the discretion of the trial courts as to costs, and we perceive no sufficient reason for making this case an exception.

For the reasons indicated, we are of opinion to affirm the decree.

*Affirmed.*