ORRIN T. SKRETVEDT

V.

MICHAEL G. KOURI

Record No. 930864

June 10, 1994

Present: All the Justices

*Orrin T. Skretvedt*, Pro-se.
*J.W. Harman, Jr. (Harman & Harman*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

This is the saga of a backyard chat between neighbors that mushroomed into an alleged partnership. The arrangement culminated in bitter controversy, during which neither party was able to agree on any material fact about the nature of the relationship or about its financial matters.

In August 1989, appellant Orrin T. Skretvedt, by counsel, filed a bill of complaint against appellee Michael G. Kouri alleging that, in 1983, the plaintiff entered into a partnership with the defendant under the name "Econo Lease." According to the allegations, each partner was "required to devote his whole time and attention to the business of the partnership," which was to act as leasing agent of automobiles. The plaintiff alleged that defendant "neglected" to give "attention" to the partnership's business, but left its management "entirely" to the care of plaintiff.

The plaintiff further alleged that defendant "collected large sums of money from the debtors of the partnership, for which no entries appear on the books of the partnership, and has applied the same to his own individual use." Also, plaintiff alleged that he feared defendant will take possession of partnership money "and will fraudulently use it outside of the partnership business for his individual profit."

In the prayer of the bill of complaint, plaintiff asked for appointment of a receiver and that defendant be restrained from dealing with partnership assets. The plaintiff further asked that the partnership be dissolved and that the plaintiff be awarded judgment against the defendant in the amount shown by an accounting, "for failure by the defendant to properly manage and run this partnership" and other acts of negligence and breach of contract.

In his answer, defendant "admits that in 1983 he entered into an arrangement with Skretvedt and that same might originally have been deemed to be a partnership." Defendant alleged, however, "that subsequent actions of the parties, and particularly actions taken by Skretvedt, tend to negate any inference of the existence of a partnership such that it could be said that no true partnership ever existed."

Further, defendant denied "that each 'partner' was required to devote his whole time and attention to the business of the 'partnership' " and stated "that, from the inception of the 'partnership' until its demise shortly thereafter, Skretvedt maintained full time employment elsewhere while Kouri devoted substantially all his

time and energy to the business of the 'partnership.' " Defendant denied the other allegations of the bill of complaint, affirmatively asserting defenses of laches and the statute of limitations.

Following denial of defendant's motion for summary judgment, which was based on the pleas of laches and the statute of limitations, the chancellor entered an amended decree of reference directing a commissioner in chancery: to report whether all interested parties were properly before the court; to report whether a partnership existed or "if in fact the defendant was simply an employee of the plaintiff"; to furnish a full accounting of all partnership funds, if such partnership existed, the accounting to include all assets, liabilities, accounts receivable, and accounts payable; and to report all other matters pertinent to the issues raised.

The commissioner conducted hearings during March and May 1990, at which nine persons testified. In April 1991, plaintiff's counsel of record withdrew, and the plaintiff has proceeded *pro se* since then.

In December 1991, the commissioner filed a three-page report. He found that the parties were "involved" in a "partnership arrangement" from March 1983 to June 1984, but that "the terms of the partnership are not capable of exact determination." The commissioner also performed an accounting and recommended that plaintiff have judgment against defendant in the amount of $17,413.66. The commissioner also recommended that the "parties should share the costs of sorting the claims out because both parties contributed to the disorder of the partnership affairs."

The plaintiff and the defendant, by counsel, filed extensive and detailed exceptions to the commissioner's report. In a January 1993 letter opinion, the chancellor, after noting there "are enough facts . . . to show a partnership was in effect although it can be argued that there are indicia indicating otherwise," found, upon review of the record, "that there is basis for all of the commissioner's findings." The chancellor requested that a final decree be prepared confirming the commissioner's report.

The defendant filed a motion to reconsider, to which the plaintiff responded. Upon reconsideration, the chancellor sustained one of defendant's exceptions to the commissioner's report. In a March 1993 final decree, the trial court overruled all exceptions, except the one, and ordered judgment in favor of the plaintiff against the defendant in the amount of $8,138.15, plus filing fees of $189.00 and interest on the judgment from the date of entry

until paid. The court further ordered the parties to share the commissioner's fee of $4,800.00. Neither the commissioner's report nor the court's final decree expressly dealt with the plaintiff's request that the partnership be dissolved. The plaintiff appeals; the defendant has not assigned cross-error.

The parties' utterly conflicting evidence will be recited in summary fashion. The plaintiff, a full-time salaried employee of the DuPont Company, "had been doing some reading on automobile leasing," which he thought "was going to be a wave of the future." In 1983, looking for "part-time, . . . evening work just to fool around with," he purchased information on a venture from "a firm called Engage-a-Car that basically was set up to help people lease cars." By "mid-February" 1983, he had attended leasing "school." He learned that a neighbor, the defendant, "had sold his business . . . and he wasn't doing anything." Plaintiff testified that "one time when we were outside" in the neighborhood, he asked defendant to "come on over and take a look at this Engage-a-Car thing and see what you think about it." After plaintiff explained "everything" he had learned about the venture, defendant "thought it was a good idea." Then, according to plaintiff, the parties entered into "some type of verbal agreement."

According to plaintiff, the parties agreed that he would "take care of the paperwork," working nights and weekends, while defendant, "a good sales person," would find individuals, mainly using the telephone, who wished to lease automobiles. Acting "like a broker agency," they would find a prospective lessee, perform the "paperwork" necessary to "put the lease package . . . together," arrange to match the customer with the car to be leased, procure the vehicle, and collect a commission "for doing all that."

The terms of the oral agreement, said the plaintiff, were as follows. The plaintiff had spent about $5,000.00 to learn about the enterprise and to buy "manuals for the customer and that type stuff." The parties agreed that the initial profits from the arrangement would be used to repay plaintiff for this $5,000.00 "investment" and then "we'll be partners 50/50."

The parties decided, according to plaintiff, to operate out of a room above plaintiff's garage, attached to his home, and to name the business "Auto Matchmaker." About six weeks later, the name was changed to "Econo Lease." In 1983, the parties executed and recorded partnership certificates in both business names in the clerk's office of the Circuit Court of Chesterfield County,

where the parties resided and where the business was conducted. According to plaintiff, the parties filed a similar certificate in the Econo Lease name for the tax year 1984.

The pair opened a business checking account with a local bank and only the two parties had check writing authority. According to plaintiff, defendant would come to the garage office every day while plaintiff worked there every evening and on weekends. Plaintiff testified that defendant "was vice president and I was president." They did not incorporate the business (although the exhibits contain copies of checks imprinted "Econolease, Inc.") because, according to plaintiff, they were planning to sell the business.

The plaintiff claimed he never received any funds from the business during its 15 months' operation except $6,500.00 received in settlement of a lawsuit brought by the partnership against Kline Leasing Corporation. The business relationship terminated, according to plaintiff, in June 1984 when defendant announced he had accepted employment with a local automobile dealer and said to plaintiff, "good-bye." To that point in time, the plaintiff "believed the business was going downhill" and "that we weren't leasing any automobiles." After defendant left the business, according to plaintiff, he determined "that we were making a lot of money that I wasn't aware of, wasn't being told about."

The defendant's version of the relationship follows. Defendant testified that "in early 1983," plaintiff came to defendant's home "on a sunny afternoon," and asked defendant, who "had a consulting company called Commonwealth Consulting Corporation," to review "this business . . . that he bought." Defendant agreed to examine the business plan and to charge a consulting fee of $35.00 per hour. Defendant reviewed the plan and, in a subsequent meeting at plaintiff's home, told plaintiff "the concept made a lot of sense" but that the "program" would not "work because it didn't give him any exclusivity." Nevertheless, plaintiff wanted to give it a "shot" because he "really needed" tax "shelters." Plaintiff persuaded defendant to join him in the venture and to use plaintiff's home as an office "because he needed write-offs."

According to defendant, plaintiff "was willing to finance the business." The parties intended that defendant would be an employee of plaintiff, receiving wages of $3,000.00 per month. When the business received income, defendant "would get paid first," then company expenses were to be paid, and the parties would

then share "any profits that would be left over . . . 50/50." Defendant said "it was a loosey-goosey, neighborhood-type of arrangement that was very informal at best."

Defendant claimed that during the time the business operated, he performed all the work, which involved "the marketing, the selling of cars, operating the office, hiring people and having them sell for us." Defendant stated that plaintiff's responsibilities were to provide profit and loss statements, handle all the bookkeeping, and "provide the finances of all the projects." Defendant testified plaintiff never prepared a profit and loss statement or a balance sheet for the business.

Defendant testified that from the beginning of the arrangement, most of the duo's efforts were to "get our little company into the hands of a company called American Transportation, Incorporated," which was involved in automobile leasing and financing nationwide. According to defendant, he spent a lot of time and money pursuing the possible purchase of Econo Lease by American Transportation. His activities included meeting with a large group of "affluent-type individuals" in New York and traveling to England to meet with a "sheik" named "Dr. Hasan," who promised to provide a billion dollars, in part for the benefit of American Transportation which would enable it to purchase Econo Lease. Hasan eventually "vanished into thin air," the funds were never provided, and American Transportation did not purchase Econo Lease.

In 1984, after discussing the venture with plaintiff, defendant resigned as plaintiff's employee because "the company wasn't making enough money." Plaintiff elected to discontinue the business because "he was really running out of money."

Defendant repeatedly denied that an actual partnership existed, establishing that plaintiff did not file partnership tax returns for either 1983 or 1984. Instead, the plaintiff treated the business as a sole proprietorship for tax purposes.

We shall not burden this opinion further with accounting minutiae. It will be sufficient to recite the commissioner's numbers, as modified by the chancellor, that relate to the issues raised by plaintiff on appeal.

The commissioner noted that the parties failed to keep accurate books and records and that the testimony of both parties was contradicted by the documentary evidence introduced during the hearings. Nevertheless, the commissioner determined that the

partnership "received gross receipts both from monies earned from lease contracts and loans from the plaintiff." The gross receipts totalled $321,011.89. The commissioner deducted necessary operating expenses of $266,311.66, leaving a balance of $54,700.23. From this balance, the commissioner deducted $10,385.51 to reimburse plaintiff for loans to the partnership, leaving a balance of $44,314.72 as the net profit of the partnership.

The commissioner found that plaintiff is entitled to one-half of the net profits plus repayment of loans advanced in the sum of $10,385.51, or a total of $32,542.87. The commissioner deducted from this sum an amount of $6,150.00, which the commissioner decided was the actual sum plaintiff received from the Kline settlement, and the sum of $8,979.21 received by plaintiff "for office equipment and improvements." The garage office had been furnished by plaintiff and he retained the improvements and equipment following termination of the business.

Thus, the commissioner concluded, plaintiff was entitled to judgment against defendant in the amount of $17,413.66, representing funds "taken" by defendant that were intended for the partnership but were not accounted for by defendant.

In sustaining, upon reconsideration, one exception by defendant to the commissioner's report, the chancellor focused on an amount of $18,551.02. The commissioner found that defendant was not only a partner but an employee of the business, working on a commission basis. The commissioner also found that defendant received the foregoing amount as "draws" against these commissions. However, that sum was not deducted in determining partnership income in the course of computing net profits before allocation between the parties. The chancellor decided the commissioner erred in this respect.

Accordingly, the trial court ruled that the actual net profits were $25,763.70 ($44,314.72 minus $18,551.02) and that plaintiff is entitled to one-half of that amount ($12,881.85) plus repayment of loans advanced ($10,385.51), minus $6,150.00 (Kline settlement) and minus $8,979.21 (office improvements) for a judgment of $8,138.15.

■ On appeal, that portion of a final decree confirming a commissioner's report will be affirmed unless plainly wrong; when the chancellor has disapproved a part of the commissioner's findings, this Court, in its examination of the evidence, must determine

whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court on that part. *Hill* v. *Hill*, 227 Va. 569, 577, 318 S.E.2d 292, 296-97 (1984); *First Nat'l Bank* v. *Cobler*, 215 Va. 852, 854, 213 S.E.2d 800, 802 (1975).

■ In the present case, the commissioner found that the parties were "involved" in a "partnership arrangement." The chancellor confirmed the finding that a partnership "was in effect," noting, however, that "it can be argued that there are indicia indicating otherwise." Our study of this record reveals why the commissioner and chancellor did not make unequivocal, unambiguous findings of partnership; the evidence on that issue was virtually in equipoise. Nevertheless, no cross-error having been assigned, we cannot reach the question whether the evidence supports the finding of partnership. Thus, we shall move to the appellate issues raised by the plaintiff, against the background that a partnership has been established.

First, the plaintiff argues that the trial court erred in allocating defendant $18,551.02 as commissions and deducting that amount in computing the partnership's net profit. The plaintiff says that defendant maintained that no partnership existed and that he was plaintiff's employee, never taking the position that he was the partnership's employee. The plaintiff argues there is no evidence that the partnership had a contract with defendant for "special compensation." We do not agree.

■ Generally, one partner is not entitled to compensation for services rendered attending to partnership affairs, unless there is an express or implied contract for such compensation. *Gilmer* v. *Fleenor*, 151 Va. 117, 122, 144 S.E. 458, 460 (1928). The chancellor confirmed the commissioner's explicit finding "that the defendant Kouri was working for the partnership on a commission basis until the partnership ended in June of 1984." We cannot say this finding is plainly wrong, particularly because defendant offered proof throughout that, whether or not a partnership existed, those funds were paid for work performed for the business. For example, defendant testified that "he could not afford to join forces with a company that would not pay" him, and "$3,000 a month . . . was discussed in specific terms." At the very least, there is evidence of an implied contract between the partnership and defendant for compensation.

It follows, therefore, that the trial court correctly deducted the $18,551.02 as a business expense in computing net profits.

Second, we reject plaintiff's contention that the court erred in failing to award him "full reimbursement for funds lent to the partnership." The commissioner gave plaintiff credit for this item in the amount of $10,385.51; plaintiff contends the number should have been $17,551.89. In addition to the initial $5,000.00 "investment," plaintiff made other cash "contributions" to the business during the course of the venture. The actual amount of the monies advanced was disputed, defendant contending that the total amount was $12,585.51 minus a cash repayment of $2,200.00 for a net of $10,385.51. The commissioner simply adopted the defendant's number and not the plaintiff's.

Additionally, the plaintiff contends the trial court erred in refusing to award interest on the monies advanced at the rate of 18 percent from July 1, 1984, which he says amounts to $30,012.12. We disagree.

■ Code § 50-18, a part of the Uniform Partnership Act, provides as pertinent:

"The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

(a) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property, . . .

. . . .

(c) A partner, who in aid of the partnership makes any payment or advance beyond the amount of capital which he agreed to contribute, shall be paid interest from the date of the payment or advance.

(d) A partner shall receive interest on the capital contributed by him only from the date when repayment should be made."

The plaintiff erroneously interprets subsections (c) and (d) to mandate payment of interest as a matter of law upon repayment of capital or repayment of advances beyond capital, regardless of

any agreement, or lack of same, between the parties. Those subsections, however, merely specify the date from which interest shall run, depending on the nature of the advance; they do not require interest automatically to be awarded upon repayment.

Under § 50-18, the nature of the agreement between the parties controls whether any interest should be awarded. Where, as here, the terms of the agreement are uncertain, the trial court is justified in refusing to award interest when a partner is repaid for contributions under subsection (a) of the statute. *See Hodge* v. *Kennedy*, 198 Va. 416, 424, 94 S.E.2d 274, 280-81 (1956) (statute not construed as mandating payment of interest); *Nogueras* v. *Maisel & Assoc. of Michigan*, 369 N.W.2d 492 (Mich. App. 1985) (interpreting identical statutory provision, intention of parties controlled award of interest). Here, as the commissioner found, "the terms of the partnership are not capable of exact determination." Thus, based on this record, plaintiff is not entitled to interest on the monies advanced.

Third, plaintiff contends the trial court erred in charging him $8,979.21, representing the value of the items used to equip the garage room as a partnership office. These items included carpet, draperies, air conditioning, a "set-up bar," a computer, a "music system," and a mirror. The plaintiff argues that these items, paid for with partnership funds, should be sold and the proceeds split. We disagree. These items, most of which are compatible with personal use of the room, have remained on plaintiff's premises during the decade since termination of his relationship with defendant. We find no abuse of discretion in charging plaintiff with their value.

We shall treat the plaintiff's fourth and fifth contentions together. The plaintiff argues that the trial court erred in failing to order prejudgment interest on the full amount of the recovery, and that the court erred in ordering the costs of the litigation to be shared equally. We reject both contentions.

Ordinarily, prejudgment interest is not allowed when accounts are unliquidated and disputed between the parties. *Stearns* v. *Mason*, 65 Va. (24 Gratt.) 484, 494 (1874). But, whether interest should be awarded, and from what date interest should run, are matters within the sound discretion of the trial court. Code § 8.01-382; *Marks* v. *Sanzo*, 231 Va. 350, 356, 345 S.E.2d 263, 267 (1986).

■ Similarly, the apportionment of costs in equity is within the trial court's discretion and will not be reversed absent a clear showing of abuse of discretion. Code § 14.1-177; *Commonwealth v. County Utilities Corp.*, 223 Va. 534, 547, 290 S.E.2d 867, 874-75 (1982).

Given the nature of this controversy, we hold that the trial court did not abuse its discretion in refusing to award the plaintiff prejudgment interest and in ordering the plaintiff to share the costs equally.

Consequently, the final decree will be

*Affirmed.*

JUSTICE LACY, with whom CHIEF JUSTICE CARRICO and JUSTICE KEENAN join, concurring in part and dissenting in part.

I concur with the majority opinion in all respects but one. Skretvedt sought interest on the monies he advanced to the partnership. His claim is based on § 50-18 of the Uniform Partnership Act, which states that:

[t]he rights and duties of the partners in relation to the partnership *shall be determined, subject to any agreement between them, by the following rules*: . . . (c) A partner, who in aid of the partnership makes any payment or advance beyond the amount of capital which he agreed to contribute, *shall be paid interest* from the date of the payment or advance. (Emphasis added.)

The commissioner found that Skretvedt had advanced $10,385.51 to the partnership in excess of his capital contributions, but declined to award Skretvedt interest on that advance. In affirming the findings of the commissioner, the majority construes this statute as merely setting the date from which interest will run but not as establishing the right to the interest; rather, the majority says that the right to the interest itself must be established by the partnership agreement. Finding that the agreement is inconclusive on the issue of the payment of interest, the majority denies interest.

I read this section differently. In the areas of corporate law and partnership law, it is not unusual for the legislature to establish certain rights or responsibilities of corporations, directors, shareholders, or partners. In so doing, the statutes operate not only to create rights or establish methods of operation, they also operate to "fill in the blanks" of the operating authority of the legal entity. In some instances, such as this one, the legislature authorizes the legal entity to deviate from the statutory norm by adopting another method of operation by express agreement, by-law, or charter. *See, e.g.,* Code §§ 13.1-698, -702. In my opinion, the provision in issue here establishes the right of a partner to receive interest for advances to the partnership, subject to any agreement to the contrary between the partners, and also establishes the right of a partner to receive that interest from the date of the advance, subject to any agreement to the contrary.

In my view, the cases relied on by the majority do not support the majority's position, but in fact support the position I posit. In *Hodge v. Kennedy,* 198 Va. 416, 424, 94 S.E.2d 274, 280-81 (1956), the issue was whether the sums advanced were payments beyond the capital contribution. After determining that the evidence was sufficient to establish that the payments were advances beyond capital, the Court concluded that "there is nothing to indicate that the allowance of interest should be denied." *Id.* This case, in my opinion, correctly applied the statute. The provisions of the statute were applied because there was no showing that the parties had agreed to act otherwise. The majority turns the traditional application of statutes of this type on its head by holding that the statute does not apply unless the terms of the agreement between the partners in this regard can be determined.

The primary issue in the second case cited by the majority, *Nogueras v. Maisel & Assoc.,* 369 N.W.2d 492 (Mich. App. 1985), also was whether certain property was given to the partnership as a gift or capital contribution entitling the defendant only to recovery of the land cost without interest after all liabilities were paid. There was no written agreement which characterized the transaction. The trial court found that the plaintiff failed to carry its burden of proving the transaction to be a gift of property or capital contribution to the partnership. In affirming the trial court's conclusion, the appellate court relied on the evidence of the intention that interest be paid as support for the finding that the land was not a gift or capital contribution. The evidence of intent

was not utilized to establish the right to interest; only to establish that the transaction was not a gift or contribution to capital. *Id.* at 497.

*Nogueras* also stands for the proposition that once an advance or loan to the partnership is established, the statute provides that interest *shall* be due. The right to interest may be altered by the agreement of the parties, but the right is established initially by the statute itself.

Accordingly, I would reverse that portion of the judgment denying interest on the advance to the partnership made by Skretvedt and award interest to Skretvedt in accordance with the provisions of § 50-18 on the amount of the advance found by the commissioner.