# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 14, 2008        Decided June 20, 2008

No. 07-7066

KRISHNA MUIR,
APPELLANT

v.

NAVY FEDERAL CREDIT UNION AND
PATRICIA L. DEARING, L.L.C.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01193)

———

*C. Sukari Hardnett* argued the cause and filed the briefs for appellant.

*Justin M. Flint* argued the cause for appellee Patricia L. Dearing, L.L.C. With him on the brief was *Aaron L. Handleman*.

*Kirsten E. Keating* argued the cause for appellee Navy Federal Credit Union. With her on the brief was *F. Joseph Nealon*.

Before: ROGERS and GARLAND, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Appellant Krishna Muir deposited $29,019.55 into a joint account that he held with his father at the Navy Federal Credit Union.  The Credit Union refused to return the funds, using them instead to satisfy a debt owed to it by Muir's father.  Muir then sued the Credit Union and a debt collection firm, Patricia L. Dearing, LLC, seeking return of his deposit and additional damages.  The district court held the Credit Union liable for tortious conversion in the amount of the deposit but denied Muir's other claims.

Muir now appeals.  We affirm the district court's grant of summary judgment for the Credit Union on Muir's breach of fiduciary duty claim, as well as its denial of his request for punitive damages.  We reverse the court's dismissal of Muir's claim against the Credit Union for tortious interference with a business expectancy, and its dismissal of his claims against Dearing under the Fair Debt Collection Practices Act.  We also reverse the court's summary denial of Muir's claims for interest and lost profits with respect to the tortious conversion.

I

In November 1986, Krishna Muir's father opened a joint share account at the Navy Federal Credit Union with Krishna, who at the time was a minor.  Ten years later, Muir's father obtained a consolidation loan of $28,705.47 from the Credit Union, with his joint share account as collateral.  He stopped making payments on the loan after a year, at which point the principal balance was $25,125.42 and accrued interest approximately $12,000.

On October 2, 2002, Krishna Muir deposited $29,019.55 into the joint share account. According to his complaint, Muir needed those funds to pursue a business opportunity, and he so advised the Credit Union agent who accepted his deposit. When Muir later contacted the Credit Union to withdraw his funds, however, he learned that the Credit Union had removed $27,022.90 from the account, without notice, in order to satisfy his father's debt.[1] Despite Muir's repeated requests, the Credit Union refused to return the money, and a Credit Union employee informed him that Patricia L. Dearing, LLC, a debt collection firm, was counseling and directing the Credit Union in the matter.

Muir filed a complaint in the United States District Court for the District of Columbia against the Credit Union for tortious conversion, tortious interference with a business expectancy, and breach of fiduciary duty; and against Dearing for tortious conversion, tortious interference with a business expectancy, and violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* For each of his tort claims, Muir sought return of his deposit, interest, lost profits, and punitive damages. He demanded a jury trial on all issues.

After the Credit Union moved for summary judgment on tortious conversion and breach of fiduciary duty, and Muir filed a cross-motion on the former, the district court granted summary judgment for Muir on his tortious conversion claim. The court noted the Credit Union's argument that, because its Joint Account Agreement provides that all deposits are owned jointly

---

[1] When the Credit Union removed Muir's funds, his account balance was $27,027.90 due to an earlier cash withdrawal. The set-off, which covered the balance of Muir's father's loan plus part of the accrued interest, left only $5.00 in the account.

by the account owners, Muir's father was beneficially entitled to the funds Muir deposited and the Credit Union was entitled to set them off to satisfy his father's debt. But the court further noted that the Account Agreement, which was not signed by Muir, also states: "[T]his agreement not valid without signature of member-owner." *Muir v. Navy Fed. Credit Union*, 2005 WL 486034, at *1 n.3 (D.D.C. Mar. 1, 2005) (quoting Credit Union Ex. B). Because the Agreement was thus "not enforceable against Mr. Muir," the court held that the Credit Union had wrongfully set off his deposit and entered judgment against it in the amount of the set-off. *Id.* at *1.

Although the court entered judgment for Muir on his tortious conversion claim, it granted summary judgment for the Credit Union on his claim of breach of fiduciary duty, concluding that there was no fiduciary relationship between the parties. *Id.* at *2. The Credit Union then moved to dismiss Muir's remaining claim -- for tortious interference with a business expectancy -- and the district court granted that motion as well, finding that Muir had not alleged sufficient facts regarding the business expectancy and his probability of realizing it. *Muir v. Navy Fed. Credit Union*, 2005 WL 3276281, at *1 (D.D.C. Aug. 22, 2005).

Meanwhile, Dearing, the debt collection firm, moved to dismiss all of Muir's claims against it for lack of standing. Without addressing Muir's tort claims, the district court held that Muir lacked standing to pursue his FDCPA claims. *Muir v. Navy Fed. Credit Union*, 366 F. Supp. 2d 1 (D.D.C. Mar. 1, 2005). Although the court found that Muir had suffered an injury when he was deprived of his deposit, it ruled that Muir lacked constitutional standing because the injury could not "be fairly traced to Defendant Dearing's conduct." *Id.* at 3. The court further held that Muir lacked prudential standing under the

FDCPA because he did not fall within the zone of interests the statute protects. *Id.*

Muir then appealed, and this court remanded the case to the district court for three reasons. *Muir v. Navy Fed. Credit Union*, 204 Fed. Appx. 896 (D.C. Cir. 2006). First, the court observed that there was no final judgment with respect to Muir's tortious conversion claim against the Credit Union because the district court had not considered Muir's requests for additional damages, each of which constituted a distinct claim. *Id.* at 897. Second, the court noted that the district court had not considered Muir's tort claims against Dearing for conversion and interference with a business expectancy. *Id.* Finally, the court found that the judgment did not comply with Federal Rule of Civil Procedure 58(a), which requires that each judgment be set forth in a separate document. *Id.* Accordingly, the court held that it lacked jurisdiction over the appeal and instructed the district court to issue a final judgment.

On remand, the district court dismissed all of Muir's claims against Dearing, holding that Muir lacked standing to pursue his tort claims as well as his statutory claims. *Muir v. Navy Fed. Credit Union*, 2007 WL 81962, at *1 (D.D.C. Jan. 8, 2007). In the same order, the court vacated its earlier judgment against the Credit Union for $27,022.90 and indicated that it would "hold a hearing to establish the damages and fees owed to plaintiff." *Id.* The court set a hearing date and ordered each party to "submit a proposed schedule of damages" in advance. *Id.* In response, Muir submitted a schedule setting out the amounts of actual damages, interest, lost profits, and punitive damages that he was seeking. At the hearing, Muir proffered his damages evidence and requested a jury trial on the issue. Following the hearing, the court again entered judgment against the Credit Union for $27,022.90 in actual damages, but it denied Muir's claims for interest, lost profits, and punitive damages. *Muir v.*

*Navy Fed. Credit Union*, 484 F. Supp. 2d 3 (D.D.C. Mar. 20, 2007).

Muir now appeals several of the district court's rulings. With respect to Dearing, Muir challenges the court's ruling that he lacked standing to bring his statutory claims under the FDCPA; he does not appeal the court's decision that he lacked standing to bring his tort claims. With respect to the Credit Union, Muir challenges the court's adverse rulings on his claims for breach of fiduciary duty, tortious interference with a business expectancy, and additional damages for the tortious conversion in the form of interest, lost profits, and punitive damages. The Credit Union does not appeal the district court's entry of judgment for Muir on his tortious conversion claim or the award of actual damages.

II

Muir brought claims against Dearing under four sections of the FDCPA. He alleged that Dearing: engaged in conduct that was harassing, oppressive, and abusive, in violation of 15 U.S.C. § 1692d; used false and deceptive means to collect a debt, in violation of § 1692e; used unfair and unconscionable means to collect a debt, in violation of § 1692f; and failed to provide Muir the notice required by § 1692g. Based on the allegations of the complaint alone, the district court dismissed all of Muir's FDCPA claims for lack of both constitutional and prudential standing, pursuant to Federal Rule of Civil Procedure 12(b)(1). *Muir*, 366 F. Supp. 2d at 3. We review a dismissal for lack of standing de novo, *Information Handling Servs., Inc. v. Defense Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003).

1. To establish constitutional standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged

conduct and that will likely be redressed by a favorable decision on the merits. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In "reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003); *see Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

Muir's allegations are sufficient, at this pre-discovery stage, to meet the requirements of constitutional standing. He alleges that Dearing and the Credit Union worked together to unlawfully remove $27,022.90 from his account (injury and traceability), and he contends that the FDCPA provides monetary relief for that action (redressability). Although the district court agreed that Muir suffered an injury when he was deprived of $27,022.90, it ruled that the injury could not "be fairly traced to Defendant Dearing's conduct because there are no allegations that Defendant Dearing made any direct, or indirect, attempt to collect the debt from Mr. Muir. To the contrary, Defendant Dearing's communications, according to the complaint, were limited to the bank and Mr. Muir's father." *Muir*, 366 F. Supp. 2d at 3. The court thus treated communications between Dearing and Muir as necessary to establish traceability. Given the complaint's allegation that Dearing and the Credit Union "worked in concert . . . to convert [funds] from the Plaintiff's Account," Compl. ¶ 30, however, Muir's injury can be fairly traced to Dearing regardless of whether Dearing communicated with Muir about the matter.

In basing its ruling on the ground that there were no allegations of communication between the two parties, the district court appears to have accepted Dearing's contention that a plaintiff can only recover against a defendant under the FDCPA if the defendant communicated with him. In response, Muir points to several provisions of the FDCPA that do not expressly require communication to establish liability. *Compare* 15 U.S.C. § 1692d (providing that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"), *and id.* § 1692f (providing that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt"), *with id.* § 1692e(11) (specifying what a debt collector must disclose in its initial communication), *and id*. § 1692g(a) (specifying what a debt collector must include in subsequent communications). Moreover, Muir contends that the statute's definition of "communication," as "the conveying of information regarding a debt directly or indirectly to any person through any medium," *id.* § 1692a(2), is broad enough to cover what he says were indirect communications from Dearing to him through the Credit Union and his father, *see, e.g.*, Compl. ¶¶ 29-31.

All of this, however, speaks not to standing but to the merits. As we explained in *Louisiana Energy & Power Authority v. FERC*, whether a statute has been violated "is a question that goes to the *merits* . . . and not to constitutional standing," because a "party need not *prove* that the . . . action it attacks is unlawful . . . in order to have standing to level that attack." 141 F.3d 364, 367-68 (D.C. Cir. 1998). Rather, in determining whether plaintiffs have standing, we must "assume

that on the merits [they] would be successful in their claims." *City of Waukesha*, 320 F.3d at 235.[2]

2. The district court also found that Muir lacked prudential standing because "Dearing's conduct does not fall within the zone of interests protected by the FDCPA." *Muir*, 366 F. Supp. 2d at 3. As we noted in *National Ass'n of Home Builders v. U.S. Army Corps of Engineers*, "[p]rudential standing requires 'that a plaintiff's grievance must *arguably* fall within the zone of interests protected or regulated by the statutory provision.'" 417 F.3d 1272, 1287 (D.C. Cir. 2005) (emphasis added) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). "The zone-of-interest test, however, is intended to 'exclude only those whose interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.* (quoting *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399 (1987)).

The district court ruled that, because the FDCPA "was enacted 'to eliminate abusive debt collection practices,'" *Muir*, 366 F. Supp. 2d at 3 (quoting 15 U.S.C. § 1692(e)), "an individual who is not *subjected* to the practices of a debt

---

[2]On appeal, Dearing further argues that Muir lacks standing under certain sections of the FDCPA because he "cannot sustain . . . causes of action" under those sections that are violated by conduct toward a "consumer." Appellee Dearing's Br. 11 (citing 15 U.S.C. § 1692e(11) and § 1692g). Muir responds that, although the cited sections do mention conduct toward a "consumer," most FDCPA provisions do not and that, in any event, he readily qualifies as a "consumer" under the Act. *See* Appellant's Reply Br. 3 (quoting 15 U.S.C. § 1692a(3) (defining "consumer" as "any natural person obligated or *allegedly* obligated to pay any debt" (emphasis added))). Once again, however, whether Muir can sustain a cause of action is a merits question, not one of standing.

collector does not fall within the zone of interests intended to be protected by the statute," *id.* But the statutory purpose the district court quoted is quite broad, and what the court meant by the phrase "subjected to the practices of a debt collector" -- other than Dearing's contention that there must have been communication between the plaintiff and the defendant -- is unclear. The statute provides for civil liability against "any debt collector who fails to comply with *any* provision of [the FDCPA] with respect to *any* person," 15 U.S.C. § 1692k(a) (emphases added), and, as noted above, several of those provisions do not contain an express "communication" requirement. Muir thus "arguably" falls within the statute's compass. While "the merits inquiry and the statutory standing inquiry often 'overlap,'" *Louisiana Energy & Power*, 141 F.3d at 367 n.5 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998)), the question of whether Muir has a cause of action under the FDCPA is a merits question, and one that is not before us on the instant appeal.

## III

Although the district court granted Muir summary judgment on his tortious conversion claim against the Credit Union, it found no breach of fiduciary duty to Muir and granted the Credit Union summary judgment on that claim. *Muir*, 2005 WL 486034, at \*2. We review de novo a grant of summary judgment under Federal Rule of Civil Procedure 56, and we may affirm only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986) (quoting FED. R. CIV. P. 56(c)). "A dispute about a material fact is 'genuine' if a reasonable jury, drawing all reasonable inferences in [Muir's] favor, could return a verdict against the defendant[]." *Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001).

The district court held that a financial institution does not generally have a fiduciary duty to its depositors. *Muir*, 2005 WL 486034, at *2. Muir brought his tort claims pursuant to our diversity jurisdiction, and we must therefore apply the choice-of-law rules of the forum state. *Republican Nat'l Comm. v. Taylor*, 299 F.3d 887, 890 (D.C. Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The district court concluded, and the parties do not dispute, that District of Columbia courts would apply the law of Virginia. *See Muir*, 2005 WL 486034, at *1 & n.1 (noting, inter alia, that the Credit Union's Membership/Share Savings Disclosure Statement states that the account is governed in accordance with the law of Virginia). Although neither party cites any of that state's cases, under Virginia law "[t]he relation between a bank and a depositor is that of debtor and creditor. The deposit creates an ordinary debt, not a privilege or right of a fiduciary character." *Deal's Adm'r v. Merchs. & Mechs. Sav. Bank*, 91 S.E. 135, 135 (Va. 1917); *see also Daisy J., Inc. v. First Bank & Trust Co.*, 50 Va. Cir. 596, 1998 WL 888946, at *4 (Va. Cir. Ct. 1998) ("[U]nder normal circumstances, the existence of the debtor-creditor relationship does not create a privilege or right of a fiduciary character."). Muir contends that credit unions should be treated differently than other financial institutions for this purpose because their depositors are part owners of the institutions. The law of Virginia, however, is to the contrary. *See Pleasant v. Haynes*, 70 Va. Cir. 396, 2006 WL 1911401, at *2 (Va. Cir. Ct. 2006) (holding that the relationship between an account beneficiary and a federal credit union "is that of debtor and creditor"); *see also McCray v. Commonwealth*, 556 S.E.2d 50, 51-52 (Va. Ct. App. 2001) (noting that the Virginia Commercial Code "includes 'credit union' within the definition of a 'bank,'" and rejecting -- as "a distinction without a difference" -- the appellant's contention that the court should distinguish a credit union from a bank because "a credit union is for members only").

The district court also found that Muir had failed to allege any other fact -- beyond the insufficient fact that he was a depositor -- that might establish a fiduciary relationship between him and the Credit Union. *Muir*, 2005 WL 486034, at \*2. The district court was again correct. Accordingly, "there is no genuine issue as to any material fact," and the Credit Union was "entitled to a judgment as a matter of law." *Anderson*, 477 U.S. at 247 (quoting FED. R. CIV. P. 56(c)).

IV

The district court also granted the Credit Union's motion to dismiss Muir's claim for tortious interference with a business expectancy, pursuant to Federal Rule of Civil Procedure 12(b)(6). *Muir*, 2005 WL 3276281. As with summary judgment under Rule 56, we review a dismissal for failure to state a claim under Rule 12(b)(6) de novo. *See Gilvin*, 259 F.3d at 756. To survive a motion to dismiss, a plaintiff need only include in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (alteration in original) (internal quotation marks omitted). Moreover, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.*; *see Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

Muir's complaint alleged that he "was in need of a portion of the funds he deposited in his Account for a then existing business opportunity," Compl. ¶ 10, and that the Credit Union's withholding of the deposit caused "the loss of that business

expectancy," *id.* ¶ 140. As the district court acknowledged, Muir alleged "that he had a 'viable business expectancy with a probability of future economic benefit,'" and he averred "to a reasonable certainty that absent the [d]efendant's intentional misconduct, he would have realized that expectancy." *Muir*, 2005 WL 3276281, at *1 (quoting Compl. ¶¶ 137, 139). The court nonetheless granted the motion to dismiss, on the ground that Muir had "not provided any additional information about the business expectancy and his probability of realizing it." *Id.*

But Muir was not required to provide specific information regarding the business expectancy in his complaint (although he would, of course, be required to do so in response to a motion for summary judgment). The allegations in Muir's complaint -- which we must take as true -- stated a cause of action for tortious interference under Virginia law.[3] He alleged that he had an existing business opportunity with a probability of future benefit, that he was relying on the money he deposited at the Credit Union to pursue the opportunity, that the Credit Union knew of the business opportunity, that he would have realized the opportunity but for the Credit Union's unlawful conduct, and that by withholding the deposit the Credit Union deprived him of that opportunity and caused him injury. Compl. ¶¶ 10-34, 136-145. Those factual allegations were sufficient to survive a

---

[3]"To prevail on a claim of tortious interference with business expectancy under Virginia Law, a plaintiff must prove: '(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to the plaintiff.'" *Muir*, 2005 WL 3276281, at *1 (footnote omitted) (quoting *Williams v. Dominion Tech. Partners, LLC.*, 576 S.E.2d 752, 757 (2003)).

motion to dismiss under Rule 12(b)(6). *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The district court also suggested that Muir "had an opportunity to flesh out [his] allegations in greater detail after receiving Defendant's Motion to Dismiss, but failed to do so." *Muir*, 2005 WL 3276281, at *1. The Credit Union's motion to dismiss did not, however, dispute that Muir had sufficiently stated a claim for tortious interference. Instead, it argued that Muir's claim should be dismissed because he had pled the same damages for all of his claims, because he had filed an appeal that terminated the case before the district court, and because he had not sufficiently pled punitive damages. Def.'s Mot. To Dismiss Count XII of Pl.'s Compl. at 3-4. Muir responded to all of those arguments in his opposition. Pl.'s Opp'n to Mot. To Dismiss Count XII of Pl.'s Compl. Nothing about the defendant's motion required him to proffer any additional facts in order to show that he had sufficiently stated a claim for tortious interference. We therefore reverse the dismissal of that claim.

V

In the final order that it issued following our remand, the district court again entered judgment for Muir for the actual damages he sustained because of the Credit Union's tortious conversion of his funds, and it directed the Credit Union to return Muir's withheld deposit. But it denied Muir's claims for interest, lost profits, and punitive damages. Under Virginia law, whether to award interest is a matter within the trial court's discretion, *see Skretvedt v. Kouri*, 445 S.E.2d 481, 487 (Va. 1994), and we therefore review the district court's denial of interest for abuse of discretion.

Whether to award lost profits or punitive damages, by contrast, is a question for the jury. *See, e.g.*, *Hamilton Dev. Co.*

*v. Broad Rock Club, Inc.*, 445 S.E.2d 140, 144 (Va. 1994); *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 740 (Va. 1985). At the post-remand hearing, Muir sought a jury trial on the issue of damages, Status Hr'g Tr. 15 (Feb. 6, 2007), but the district court ultimately disposed of Muir's damage requests on its own, *see Muir*, 484 F. Supp. 2d at 5-6. Although the court did not specify the nature of that disposition, it appears to have granted summary judgment for the Credit Union with regard to lost profits and punitive damages. *See id.* at 5 (noting that a plaintiff "is required to show sufficient facts and circumstances to permit a [fact-finder] to make a reasonable estimate" of damages for lost profits, and holding that Muir "offered no evidence of malice or a conscious disregard for plaintiff[']s rights" to support punitive damages (first alteration in original) (internal quotation marks omitted)). We review that grant de novo, bearing in mind that summary judgment is appropriate only when there is no genuine dispute as to material facts.

1. After this court remanded the case for the district court to consider Muir's additional damages claims, the court ordered each party to "submit a proposed schedule of damages" and indicated that it would hold a "hearing to establish the damages and fees owed to plaintiff." *Muir*, 2007 WL 81962, at *1. Muir's schedule stated that he sought $4,365.41 in interest, calculated at 6% per year for 2 years, 6 months, and 25 days. Pl.'s Schedule of Damages (J.A. 311). At the hearing, he explained that this was the period of time his money was withheld from him by the Credit Union. Status Hr'g Tr. 12-13 (Feb. 6, 2007). The district court denied Muir's claim for interest, stating that he had "provided no explanation or argument in support of this award of interest in his pleadings, or . . . in his Schedule of Damages." *Muir*, 484 F. Supp. 2d at 6.

But there was no more that Muir needed to say. Muir deposited money in a credit union, which was obligated to pay

interest on that deposit. Instead, the credit union withheld both the deposit and the interest. Return of the deposit alone could not have made him whole. Muir clearly specified both the interest rate and the time period over which it should be applied. The Credit Union objected to neither. Under these circumstances -- and in the absence of any further explanation as to why interest should not be awarded -- denial of an award of interest exceeded the scope of the court's discretion.

2. In the same schedule of damages, Muir requested $110,750 in lost profits. Although the Credit Union maintains that Muir "made no proffer of evidence during [the damages] hearing," Appellee Credit Union's Br. 13, that is simply not true. At the hearing, Muir's counsel explained that Muir had intended to use his deposit as a downpayment on the purchase of real estate, which he had an opportunity to fix up and resell at a profit. Counsel further proffered that Muir had "already engaged in an agreement with a young woman whose property was in foreclosure," Status Hr'g Tr. 11 (Feb. 6, 2007), and that he had several other opportunities "lined up," *id.* at 10. Moreover, counsel advised the court that Muir had "a witness here today" to testify in support of his claims. *Id.* at 10-11. The court, however, adjourned the proceeding without hearing from the witness. In a subsequent order, the court denied Muir's request for recovery of lost profits, stating that he had "failed to provide any factual or legal grounds for any lost profits" and had "provided no basis to demonstrate that [the Credit Union's] actions were the proximate cause of any lost profits." *Muir*, 484 F. Supp. 2d at 5. The court indicated that the absence of "supporting argument" in Muir's schedule of damages meant that he had failed to make out his claim. *Id.*

We disagree. Muir reasonably assumed that the schedule of damages the court directed him to file was to contain only a list of the types and amounts of damages he sought, and that he

17

would have an opportunity to present supporting evidence and argument at the hearing the court set "to establish the damages and fees owed to plaintiff." *Muir*, 2007 WL 81962, at *1.[4] In light of the offer of evidence that Muir made at that hearing, the court could not -- without hearing that evidence -- have concluded that there was no genuine issue of material fact on the question of lost profits.

3. Finally, we consider the district court's denial of Muir's request for punitive damages. *Muir*, 484 F. Supp. 2d at 5. The court noted that, to qualify for punitive damages for a tortious conversion under Virginia law, a plaintiff must show: (1) "misconduct or malice, or such recklessness or negligence as evinces a conscious disregard of the rights of others," and (2) that the defendant's conduct imports "knowledge and consciousness that injury will result." *Id.* (quoting *PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 444 (Va. 2003)). The court found that Muir could not satisfy this standard because: (1) he offered no evidence of malice or of conscious disregard for his rights, *and* (2) the facts and circumstances of the case did not suggest that the Credit Union had the requisite knowledge or consciousness that injury would result. *Id.*

We affirm the district court's grant of summary judgment for the Credit Union on the former ground. The court held the Credit Union responsible for tortious conversion solely because

---

[4]The term "schedule of damages" is not defined in any court rule. Perhaps the closest reference is Local Civil Rule 16.5, which calls on each party to present "an itemization of damages" in its Pretrial Statement. D.D.C. CIV. R. 16.5. The Rule states that this itemization "shall set forth separately each element of damages, and the monetary amount thereof, the party claims to be entitled to recover of any other party, including prejudgment interest, punitive damages and attorneys' fees." *Id.* That is what Muir's schedule of damages set forth.

Muir had not signed the joint account agreement that otherwise would have permitted the Credit Union to set off his deposit to satisfy his father's debt. *Muir*, 2005 WL 486034, at *1. The Credit Union's normal practice was to require joint account holders to sign an agreement allowing such set-offs, and it simply assumed that Muir had signed such an agreement. There was no evidence that the Credit Union knew that it did not have a signed document from Muir when it set off his account.

At the hearing on damages, the only argument that Muir made to support punitive damages was that the Credit Union knew he needed the money to pursue a business opportunity when it wrongfully withheld his funds. Status Hr'g Tr. 6-7 (Feb. 6, 2007). Although this may have been sufficient to create a genuine issue as to the defendant's "knowledge and consciousness that injury w[ould] result," it was not sufficient to create a genuine issue on the question of malice or conscious disregard of rights. Muir did not contend that the Credit Union knew it did not have a signed document from Muir or otherwise knew it was not entitled to set off his account. There was therefore no genuine issue of material fact on the required element of malice or conscious disregard of the rights of others, and the district court appropriately granted summary judgment for the Credit Union.

VI

For the foregoing reasons, we affirm the district court's dismissal of Muir's claim against the Credit Union for breach of fiduciary duty and its denial of his request for punitive damages for tortious conversion. We reverse and remand the court's rulings that Muir lacked standing to bring his statutory claims against Dearing, that Muir failed to state a claim against the Credit Union for tortious interference with a business

expectancy, and that Muir was not entitled to interest or lost profits with respect to the Credit Union's tortious conversion.

*So ordered.*